## ACE DEVELOPMENT CO., INC., ET AL. *v.* HARRISON ET AL.

[No. 30, October Term, 1950.]

*Decided November 15, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*J. Mayer Willen,* for appellants.

*Charles C. W. Atwater* with whom were *Armstrong, Machen & Eney* on the brief, for appellee.

GRASON, J., delivered the opinion of the Court.

This case presents for review an order of the chancellor (dated February 27, 1950) overruling the demurrer filed by the defendants jointly and severally to the whole bill of complaint filed against them, and to each and every paragraph thereof, and to each and every prayer for relief prayed therein.

The bill of complaint consumes twenty pages of the appellants' appendix, and cannot be set out in full in this opinion. The material facts alleged therein may be stated in narrative form as follows: The Ace Development Company, Inc., is a Maryland corporation, and was engaged in developing real estate on East Coldspring Lane, in Baltimore City; it sells lots in the development and erects thereon houses for purchasers of said lots;

Newton C. Sibley and John Kablis are officers and directors of this corporation and are in actual personal charge of sales and construction; it entered into four separate and distinct contracts with the plaintiffs, all of which contracts are exactly alike, except for the names of the parties, the dates thereof, and some differences in price. We quote the contract entered into by the corporation with Edward J. Fink (single) as an example of the contracts involved in this case.

"This Agreement of Sale, made this Second day of May nineteen hundred and Forty-six between Ace Development Company, Inc., Seller, and Edward J. Fink (Single) Buyer.

"Witness that the said Seller does hereby bargain and sell unto the said Buyer, and the latter does hereby purchase from the former the following described property, situate and lying in Baltimore City, State of Maryland, and being subject to an annual Ground Rent of $90.00 and further described as a two story brick house to be erected in accordance to plans and specifications as approved by the Veterans Administration and known as No. 819 East Cold Spring Lane, at and for the price of Fifty two hundred and fifty Dollars ($5,250.00) of which Two hundred Dollars ($200.00) have been paid prior to the signing hereof, and the balance to be paid as follows: Cash upon completion and the purchase mortgage money is to be secured through the G. I. Loan plan.

"And upon payment as above provided of the unpaid purchase money, a deed for the property shall be executed at the Buyer's expense by the Seller, which shall convey the property by a good and merchantable title to the Buyer, free of liens and encumbrances except as specified herein and except: Use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the subdivision in which the property is located, and publicly recorded easements for public utilities above ground and any other easements which may be observed by an inspection of the property.

"Ground rent, rent, water rent, taxes and other public charges against the premises shall be apportioned as of date of settlement, at which time possession shall be given; and the said parties hereto hereby bind themselves, their heirs, executors and administrators, for the faithful performance of this agreement.

"It is also understood and agreed that the Seller shall immediately have all of the insurance policies on the property so endorsed as to protect all parties hereto, as their interests may appear, and continue said insurance in force during the life of this Contract.

"This Contract contains the final and entire Agreement between the parties hereto, and neither they nor their Agents shall be bound by any terms, conditions or representations not herein written; time being of the essence of this Agreement. Cost of all documentary stamps required by law shall be divided equally between the parties hereto.

"Seller hereby agrees to pay commission on this sale, in accordance with the Standard Schedule of Commissions of the Real Estate Board of Baltimore, to

"Witness in duplicate the hands and seals of the parties hereto the day and year first above written.

"/s/ Ace Development Co., Inc. (Seal)
By N. C. Sibley, V. Pres.
Seller's Signature
"/s/ Edward J. Fink (Seal)
Buyer's Signature
"/s/ H. I. Skaggs, Jr.
As to both"

The negotiations for sales of the respective lots and building of a house thereon were conducted by Sibley and Kablis; these houses were financed under the G. I. Bill of Rights, and in order to procure materials for the erection of the same Federal priorities had to be obtained; application for such priorities was not made by the Ace Development Company, but was made by the Ace Construction Company, Inc.; the latter company was and is a defunct corporation and did not exist at

the time of the application for priorities, but was a corporation of which Sibley and Kablis were previously officials; that in the application for priorities it was represented that the houses would be constructed in accordance with certain plans and specifications submitted, and that veterans of military service during World War II would be given priority, as provided by Priorities Regulations 33; applications for building permits, to the Bureau of Buildings of Baltimore City for the construction of these houses, are duplicates of the plans filed with the Federal Housing Administration, and were made in the name of the Richwood Development Company, which was at that time a defunct corporation, and Sibley and Kablis were interested in the same before it legally expired on October 24, 1923; the plans of these houses filed with the application for a permit from the Bureau of Buildings of Baltimore City showed on their face that they were made by Edward C. Brown, designer for Ace Construction Company, Inc.; each of the complainants is a veteran of the military service of World War II, and was in desperate need of housing for himself and family; each complainant "purchased one of the homes constructed by the Respondents, and pursuant to the Servicemen's Readjustment Act of 1944, 38 U. S. C. A. § 693 et seq., secured a mortgage loan in order to pay the balance of his respective contract price at the time of settlement, and is obligated to maintain his payments under such mortgage to his respective mortgagees"; the American National Building and Loan Association was financing, or partly financing, the construction of said houses and one H. I. Skaggs, Jr., who was an employee of said association, told the plaintiff Milton L. Harrison that his house would be constructed "under the same plans and specifications and exactly similar to the houses on the north side of said East Cold Spring Lane", and that said Skaggs was at the time an authorized agent of the respondent, the Ace Development Company, Inc.; and that said houses on the north side of East Cold spring Lane had been inspected by the

plaintiffs at that time; and that the complainants relied upon the representations of the officials and agents of the corporate defendant, viz., that the houses were to be built and would be completed in accordance with the aforementioned plans and specifications filed with the Federal Housing Administration, and in a similar manner to that in which the said houses on the north side of Cold spring Lane had been constructed; that the respondent did not perform its obligation under said contract, and unlawfully violated the terms of said contract in that the respective houses on said lots were not built in accordance with said plans and specifications and were not built exactly similar to the houses on the north side of said block of Cold spring Lane, and were constructed in a wilfully improper, negligent and unlawful manner, in violation of the building code of Baltimore City in the following particulars: (then follows two pages in the appellants' appendix devoted to specifying the way and manner in which the defendant has violated the contract).

Such allegations are made on behalf of each and every one of the plaintiffs, with the exception of some variation. With reference to these allegations it is sufficient to say, assuming them to be true, as we must do in ruling on the demurrer, that they show that these houses were weakly constructed, wanting in reasonable material and workmanship, and, in fact, that they were wretchedly constructed. The bill further alleged that Sibley and Kablis dominated the corporate defendant, and that they, in fact, constituted the corporate defendant; that complainants relied upon the representations made by the agents of the defendant corporation, and have fully complied with said contracts, and entered into possession of the houses; that all of the defects in said houses were not patent at the time they took possession, but some defects subsequently developed; that they called upon the defendants to make such repairs in said houses as would make them conform to the contracts under which they were built; that they promised to do so, which they never did, and in making such promise to repair they were

guilty of fraud; that the individual defendants are financially responsible, but that the corporate defendant, which they aver is operated solely by the individual defendants, is financially irresponsible. In the settlement for one of these properties $500 was held in escrow by the aforesaid building association pending the completion of certain work on this house, to make the house conform to the contract. It is averred in the bill that the deeds for the various properties involved in this case were executed, not by the corporate defendant, but by one or the other of the individual defendants.

The bill prayed: 1. For specific performance of the several contracts; 2. or for monetary damages in lieu of specific performance; 3. for the award of monetary damages for the loss and inconvenience caused by the failure to carry out said contracts; 4. for the award of monetary damages for the loss and inconvenience caused by reliance upon the fraudulent misrepresentations of Respondents; and 5. for general relief.

In this case several questions were presented and argued, but we think that the controlling question is whether the bill recites clear and specific acts which on their face constitute fraud as a matter of law that would justify the relief prayed. We shall proceed to examine this question.

The purpose of a corporation is limited liability to its stockholders. It has power to engage in all matters authorized by its charter. It acts only through its authorized agents. A board of directors is elected by its stockholders and manages and conducts its business affairs. A corporation, operating through its agents within the scope of their authority within corporate power, is liable for its acts the same as is a natural person. This would seem to be axiomatic. Nevertheless, the acts of an agent of a corporation in matters not involving corporate affairs are separate and distinct from corporate acts, even though such acts may affect the corporation. A director or agent, not acting as such but in his private capacity, may, in good faith,

buy stock of his corporation, and has a perfect right to do so, even though it may be said that the buying of the corporate stock by a director or agent would have some effect upon corporate affairs.

An official or agent of a corporation is not totally absorbed by it and its business. Such officer or agent engages in personal transactions separate and distinct from corporate affairs. An act done on behalf of a corporation is one thing—an act done in the agent's private capacity is entirely another thing. The two acts have no relation. And so, when an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud, as hereinafter referred to. *Llewellyn v. Queen City Dairy*, 187 Md. 49, 48 A. 2d 322.

"Whenever, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal, unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of the principal". *Burkehouse v. Duke*, 190 Md. 44, 46-47, 57 A. 2d 333, 334.

We have said: "There is a real difference between ownership of stock of a subsidiary and ownership of its property. * * * In the absence of evidence of any unlawful or improper purpose, * * *." *Warren v. Fitzgerald*, 189 Md. 476-492, 56 A. 2d 827, 834; *Baltimore Transit Co. v. Hessey*, 196 Md. 141, 75 A. 2d 76-80.

There is nothing wrong in owning shares in a corporation, and such an owner is not the corporation, and except for his right to vote his stock, he has nothing to do with the corporation.

It needs no authority to support the proposition that a corporation, through its agents, cannot enter into a contract, having at the time the deliberate intention and purpose of cheating and defrauding one who is a

party to the contract. In such case not only is the corporation liable for such action, but the agents who engage in the conspiracy are personally liable for damages resulting from such a transaction. Agents of a corporation, in such a matter, cannot hide behind the corporate shield and say they were acting solely as the agents of the corporation. The State charters a corporation to do business in an honest manner and not to cheat and defraud, and so far as agents of a corporation are involved, if they use a corporation for the deliberate purpose of making a contract for it, when at the time they intend to defraud a party thereto, and the contract is merely an avenue on which the fraud operates, they are individually liable. Of course, corporate transactions effected through its agents are presumed to be decent and honest. Manifestly the State chartered them on that assumption. So that when a corporate act is challenged for fraud, the burden of proof is on the one charging fraud to establish by clear, specific acts, facts that in law constitute fraud. Mere exclamation or charges cannot create fraud out of matters which on their face do not legally constitute fraud. *Llewellyn v. Queen City Dairy, supra; Edison Realty Co. v. Bauernschub,* 191 Md. 451, 62 A. 2d 354.

In order to decree specific performance, or compensation in lieu thereof, where one complaining is in the enjoyment of the fruits of the work and property involved in the transaction, even though the contract was breached it is incumbent upon the party complaining to show at the time the contract was entered into it was intended by the defendant to use the contract for the purpose of cheating and defrauding the complainant. In other words, that the defendant intended at the time the contract was entered into, to use it as a means to cheat and defraud. *Edison Realty Co. v. Bauernschub, supra.* See *Purdum v. Edwards,* 155 Md. 178, 141 A. 550. This is the burden that the complainants in this case assume, and their bill, in order to state a case,

must allege facts that show clearly, as a matter of law, that such was the case.

Looking at the allegations of the bill we find the following set up as the basis for fraud existing at the time the contracts were entered into. 1. That the application for priorities was not made in the name of the corporate defendant. 2. Nor was application for building permits made in the name of the corporate defendant. 3. That the deeds conveying the lots with the houses erected thereon were not made by the corporate defendant. But these matters, it seems to us, are not important, in view of the fact that the materials for the building of the houses were obtained, the houses built, and each complainant has title to the house and lot he purchased. There is nothing in the bill to controvert this, nor that any complainant made any objection to the manner in which they were vested with title. See *Clark v. Kirsner,* 196 Md. 52, 74 A. 2d 830.

It is charged that the individual defendants dominate and control the corporate defendant and that they are, in fact, the corporate defendant; and the basis for this averment would seem to be that these two individual defendants, as agents of the corporate defendant, sold the lots and constructed the houses and signed the deeds individually, and taken in connection with the manner in which they obtained the priorities and building permits, and the fact that the houses were not erected in accordance with the contract, that then, although these contracts were signed by the corporate defendant, through one or the other of the individual defendants as its agent, the individual defendants should be held liable in this case, because they dominate and control and are in fact the corporate defendant. All of which it is urged constitutes proof of fraud and conspiracy at the time the contracts were entered into. It is not stated how many shares of stock the corporate defendant issued, nor to whom, although a majority of the stockholders elect directors who transact the lawful business of a corporation. Neither of the individual defen-

dants in this case signed any of the contracts individually. They were acting solely as officers of the corporation, and, as we have stated, unless at the time they signed these contracts for the corporation they intended to cheat and defraud the complainants, the relief prayed for could not be decreed.

We are of opinion that the case of *Edison Realty Co. v. Bauernschub, supra,* controls the decision in this case. In that case Bauernschub was a war veteran and entered into a contract with the Edison Realty Company to purchase a house when completed. Harry Bart was the president, Fred Bart, treasurer, and Sara Bart was the secretary of said company. The price of said house was $9000.00. Baurenschub was informed that the house was substantially completed and if any items were not completed they would be completed promptly after settlement, and relying upon this assurance Baurenschub paid the corporation $4000.00 in cash and gave a mortgage on the property for $5000.00, financed under the G. I. Bill of Rights. It was alleged in that case the complainants were not permitted to inspect the interior of the house until after they made settlement and received a deed therefor, and they afterwards discovered that the house was not completed in accordance with the contract and that when the defendants promised to complete the house they had no intention of performing the obligation, but, on the contrary made the promises in order to induce the complainants to pay for and accept an incompleted house. The prayers were for specific performance or compensation in lieu thereof, and this relief was refused. The facts in that case are so similar to the facts of the case at bar that it is controlling.

From the allegations in the bill, we cannot say an inference is warranted that the individual defendants, agents of the corporate defendant, intended, at the time these contracts were entered into, to cheat and defraud the complainants. Fraud is a serious charge and the law requires that acts constituting fraud be clearly and specifically stated. If the facts charged in this bill to con-

stitute fraud are wanting (as we find they are) the demurrer to the bill in this case should have been sustained.

The allegations of the bill as to the corporation state a good case for specific performance and its demurrer was properly overruled. *Laurel Realty Co. v. Himelfarb,* 194 Md. 672, 72 A. 2d 23; *Laurel Realty Co. v. Himelfarb,* 191 Md. 462, 62 A. 2d 263.

Order overruling demurrer affirmed as to corporate defendant, and reversed and bill dismissed as to the individual defendants. Costs to be equally divided between corporate defendant and the appellees.