948 A.2d 132

David W. SELBY

v.

WILLIAMS CONSTRUCTION SERVICES.

No. 0327, Sept. Term, 2007.

Court of Special Appeals of Maryland.

May 9, 2008.

---

Leonard A. Sacks, Rockville, for appellant.

Daniel K. Maller, Merrifield, for appellee.

Panel DAVIS, DEBORAH S. EYLER,* J. FREDERICK SHARER, (Retired, Specially Assigned) JJ.

SHARER, J.

In this appeal we are asked to decide the propriety of a personal judgment entered against the managing agent of a corporation under the Maryland construction trust statute, Md.Code, Real Property, §§ 9–201, et seq. (2000 Repl.Vol.).

David W. Selby, appellant and Selby Construction, Inc., were sued by appellee, Williams Construction Services, for money damages. The Circuit Court for Prince George's County entered judgment in favor of Williams and against Selby Construction and David Selby, jointly and severally, in the amount of $70,550.69.

In this appeal, David Selby raises a single issue, which, as rephrased, is:

---

\* Sharer, J. Frederick, participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

Whether appellant is personally liable under the Maryland Construction Trust Statute for an obligation owed by Selby Construction, Inc. to appellee.

For the reasons that follow, we shall reverse the judgment of the circuit court.

## BACKGROUND

David Selby is the owner, president, and sole shareholder of Selby Construction, Inc., a company engaged primarily in the performance of concrete and related construction. As such, Selby meets the definition of "managing agent" in Real Prop. § 9–201(a). In the performance of its specialty work, Selby Construction leased heavy construction equipment from appellee, Williams.

H.R. General Maintenance Corp. ("HRGM"), a general construction company, entered into a contract with Prince George's County, Maryland, as the general contractor on a project involving the Cheverly Health Center. HRGM then subcontracted with Selby Construction to perform concrete work at the project. On March 22, 2002, Selby Construction entered into an agreement with Williams in which Williams agreed to provide equipment, materials, and services to Selby Construction.

At the end of the project, not having been paid in full, Selby Construction filed suit against HRGM, claiming that it was owed $205,000. In a separate action, Williams filed suit against Selby Construction and David Selby, alleging that its account with Selby Construction on the Cheverly project was unpaid in the amount of $70,550.69, for crane rental and associated services. In addition to a claim that Selby Construction had breached its contract by "failing and refusing to remit payment," Williams also sought to hold David Selby personally liable under the construction trust statute.

The parties stipulated to the entry of judgment in favor of Williams against Selby Construction, and judgment was entered accordingly for $70,550.60. Contested was whether Selby should be personally liable to Williams under the con-

struction trust statute. On March 30, 2006, the circuit court entered a judgment holding Selby personally liable to Williams. Selby filed a motion to alter or amend, requesting that the court provide reasoning to support its opinion. The motion was denied on April 20, 2006.

Selby then filed a timely appeal to this Court, contending that the circuit court erred by failing, pursuant to Md. Rule 2–522(a), "to provide a statement of reasons for its decision and the basis for determining any damages in support of its judgment against Selby [individually]." This Court remanded, directing the circuit court to state its reasons in support of its judgment *Selby v. Williams Const.*, No. 548, Sept. Term 2005, 172 Md.App. 724 (filed February 21, 2007, unreported). The circuit court issued a memorandum opinion on February 22, 2007, stating:

ORDERED that Judgment is entered in favor of [appellee] and against [appellant] in the amount of $70,550.69, jointly and severally with co-defendant Selby Construction, Inc., because:

1. [Appellant] testified that he was the sole officer, director, shareholder and managing agent of Selby Construction, Inc., and that he personally handled all receipts, disbursements and invoices of the corporation;

2. [Appellant] received, on behalf of Selby Construction, Inc., all payments from the general contractor, HRGM Corporation, and was responsible for disbursing those funds to subcontractors, including [appellee], pursuant to invoices received;

3. [Appellant] failed to explain why he did not disburse funds to [appellee] from those received from HRGM Corporation, but explained only that the funds received from HRGM Corporation were insufficient to satisfy invoices of all subcontractors, signifying commingling of funds due subcontractors;

4. [Appellee] established that it satisfactorily completed work on its subcontract with [appellant], and that [appellant] owed it $70,550.69;

5. Therefore, [appellee] established, by a preponderance of the evidence, that HRGM Corporation paid [appellant] funds to be held in trust for [appellee] as [appellant's] subcontractor, as required by MD.Code Anno., Real Prop. Art., § 9–201(b)(2), and that [appellant's] admitted personal knowledge of these circumstances entitles [appellee] to judgment against him, pursuant to Real Property Article § 9–203.

Selby has again appealed, asserting that the evidence before the circuit court was not sufficient to establish personal liability.

We shall set forth additional facts as they become necessary.

## DISCUSSION

When, as in the instant case, an action has been tried without a jury, we review the case on both the law and the evidence, and will not set aside the judgment of the trial court on the evidence unless it is clearly erroneous. Md. Rule 8 – 131(c).

### The Maryland Construction Trust Statute[1]

This appeal implicates the Maryland construction trust statute, Md.Code, Real Prop. § 9–201, *et seq.* Entitled "Moneys to be held in trust; commingling," the statute provides:

(a) For the purposes of this subtitle, "managing agent" means an employee of a contractor or subcontractor who is responsible for the direction over or control of money held in trust by the contractor or subcontractor under subsection (b) of this section.

(b)(1) Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor

---

1. What has become known generically as the "Maryland construction trust statute" is codified in Md.Code, Real Property, Subtitle 2. *Trust Relationships in the Construction Industry,* §§ 9–201–9–204. For convenience, we shall refer to the legislation as the "trust statute."

for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

(c)(1) Nothing contained in this subtitle shall be construed as requiring moneys held in trust by a contractor or subcontractor under subsection (b) of this section to be placed in a separate account.

(2) If a contractor or subcontractor commingles moneys held in trust under this section with other moneys, the mere commingling of the moneys does not constitute a violation of this subtitle.

### Williams's Contentions

To impose personal liability on Selby, Williams relies on Real Prop. § 9–202:

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under §§ 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

As we have noted, the circuit court agreed with Williams's application of § 9–202:

[Appellant] failed to explain why he did not disburse funds to Plaintiff from those received from HRGM Corporation, but explained only that the funds received from HRGM Corporation were insufficient to satisfy invoices of all sub-

contractors, signifying commingling of funds due subcontractors.

## Selby's Contentions

In contrast, Selby argues that "[n]either of these provisions [of the trust statute] impose[ ] personal liability on an officer, director or managing agent merely because there are insufficient funds available to pay subcontractors to a general contractor or sub[ ] subcontractors to a subcontractor." On this record, we agree and explain.

The trust statute was enacted in 1987 "to protect subcontractors from dishonest practices by general contractors and other subcontractors for whom they might work." *Ferguson Trenching Co., Inc. v. Kiehne,* 329 Md. 169, 174–175, 618 A.2d 735 (1993). The statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties. As a result, it is a trust implied in law. *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990).

In its original incarnation, the statute provided that diversion or misapplication of funds was *prima facie* evidence of an intent to defraud parties to whom funds were due under construction contracts. Real Prop. § 9–203 provided:

> The use by a contractor or subcontractor or any officer, director, or employee of a contractor or subcontractor of any moneys held in trust under §§ 9–201 of this subtitle, *for any other purpose than to pay those subcontractors who did work or furnished materials, or both, for or about the building, shall be prima facie evidence of intent to defraud in a civil action.*

Section 9–203 was amended out of the statute in 1995, and the legislature, at the same time, enacted what is now codified as Real Prop. § 9–201(b)(2):

> [A]n officer, director or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of

paying the money to the subcontractors who are entitled to it.

Significant to the issue before us, the amendment eliminated the fraud presumption.

■ It is not disputed that Selby was a managing agent as defined by Real Prop. § 9–201(a). Williams argues that "the repeal of former § 9–203, the deletion of 'intent to defraud' from § 9–202 and the additions to 9–201 unmistakably render Mr. Selby liable under the circumstances of this case." Williams would have us impose personal liability on Selby merely because Selby Construction did not have sufficient funds to pay Williams. That theory, if extended, would impose personal liability on a managing agent in every case in which a corporate contractor was unable to pay a subcontractor or supplier, regardless of the reason. It is not unusual in the construction industry for contractors or subcontractors to go unpaid, or not be paid in full, and thereby be unable to pay their subcontractors. The reasons are many—careless estimating at the outset, unforeseen events during construction, such as labor disputes, adverse weather, or unrelated financial failure, for example.

The only previous appellate discussion of the Maryland trust statute is found in *Ferguson Trenching Co. v. Kiehne, supra.* The issue in *Ferguson* is one with which we are not here presented—the meaning of "intent to defraud" for, as we have discussed, the statute no longer creates a presumption of an intent to defraud upon the mere failure to pay lower tier subcontractors or suppliers.

Nonetheless, *Ferguson* is instructive. Writing for the Court in *Ferguson,* Judge Chasanow reviewed the legislative history of Real Prop. § 9–201, *et seq.,* concluding, as noted, that the public policy underlying the enactment of the trust statute was "to protect subcontractors from dishonest practices by general contractors and other subcontractors" for whom they have performed subcontracting services. Prior to the enactment of the trust statute

an unscrupulous individual could establish a thinly capitalized construction company, use funds from a project to pay

handsome salaries to the company's officers, and be fairly confident that the officers would not be personally responsible for the debts of lower-tiered subcontractors and suppliers.

David F. Albright, Jr., *The Maryland Construction Trust Statute: New Personal Liability–Its Scope and Federal Bankruptcy Implications*, 17 U. Balt.L.Rev. 482, 484 (1988).[2]

We do not read the trust statute as creating, in the construction industry, a special class of corporations, *vis-a-vis* all other corporations. Indeed, the *Ferguson* Court recognized as much:

> The personal liability provisions of the statute must be viewed in the context of basic corporate law. Officers and directors of a corporation generally are insulated from personal liability for the debts of the corporation. As we said in *Ace Dev. Co. v. Harrison,* 196 Md. 357, 366, 76 A.2d 566 (1950), "when an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud ..." *See also Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.,* 275 Md. 295, 312, 340 A.2d 225 (1975) ("the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity").

*Ferguson,* 329 Md. at 175, 618 A.2d 735.

We decline to adopt a holding that would avoid the protection afforded by the corporate veil, absent a justifiable and legally recognized reason. We cannot adopt Williams's position that the statute creates an exception to general corporate limited liability. There is no reasonable construction of the statute that would lead to such a conclusion.

---

**2.** In the article, the author reviews cases decided in other states under similar trust statutes. The issue in most of those cases is whether the person upon whom personal liability was sought to be imposed had a sufficient nexus to, or control of, diverted funds to support such liability. That issue is precluded in the instant case, for it is agreed that David Selby was the "managing agent" and, upon sufficient proof, could be personally liable.

Counsel has directed us to no Maryland case interpreting the amended trust statute, and we have found none. The statute has, however, been applied in bankruptcy proceedings. Those cases are instructive. Indeed, the Court of Appeals observed in *Ferguson, supra,* 329 Md. at 177, 618 A.2d 735, "In the five years since its enactment, the statute has been reviewed only five times in reported opinions, each time by the federal bankruptcy court." We are comfortable, therefore, in considering the bankruptcy court precedents.

In *In re McGee,* 258 B.R. 139 (Bankr.D.Md.2001), the bankruptcy court provided a useful guideline for proving a violation of the Maryland Construction Trust Statute.

> In order to prove a violation of the Maryland Construction Trust Statute, and thereby to obtain personal liability against the debtors, claimants must show (1) the existence of funds held in trust on behalf of the claimants by the debtors as trustees, (2) paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor (3) for work done or materials furnished, or both, for or about a building by the subcontractor-claimants. Md. Code Ann., [Real Prop.] §§ 9–201, (4) The commingling of trust funds by the contractor is not a bar to recovery by claimants. The lack of a requirement that trust funds must be segregated in a separate account indicates that while the commingling of trust funds is not a violation of the statute, it is likewise not a bar to recovery. This means that specific trust funds need not be traced by the claimants in order to enforce the trust and to recover for its violation. Claimants must further show that (5) a person in control of the corporation, whether an "officer, director, or managing agent of any contractor or subcontractor" (6) "knowingly retain[ed] or use[d]" the moneys held in trust "or any part thereof" (7) "For any purpose other than to pay those subcontractors for whom the moneys are held in trust." Md.Code Ann., [Real Prop.] §§ 9–202.

*McGee, supra,* 258 B.R. at 148.

*McGee* demonstrates that commingling of funds is not *per se* evidence of an intent to defraud. Indeed, Williams concedes

that the circuit court erred in its reliance on the evidence of commingling as a basis for Selby's personal liability.

The funds received by Selby Construction from HRGM were paid in response to general invoices. The invoices did not specify for which aspect of the project payment was sought, nor did they specify to which subcontractor the funds would be disbursed. Therefore, Williams was unable to prove the existence of funds held in trust "on behalf of the claimant," that is, on behalf of Williams specifically. In sum, there was no earmarking or particularized designation of the funds paid by HRGM to Selby Construction.

In *McGee*, the claimants "amply demonstrated the existence of prepetition claims against the corporate entities, *that funds earmarked for the payment of those claims were diverted* to loans to the debtors and other payments for their benefit and that Mr. McGee failed to pay subcontractors and suppliers for whom the moneys were held in trust." *McGee, supra*, 258 B.R. at 148 (emphasis added).

The record does not support a finding that Selby " 'knowingly retain[ed] or use[d]' the moneys held in trust 'or any part thereof'. . . [f]or any purpose other than to pay those subcontractors for whom the moneys are held in trust." *McGee, supra*, 258 B.R. at 148 (quoting Md.Code Ann., Real Prop. § 9–202). Nor is there evidence that funds were diverted from the payment of legitimate Selby Construction obligations. There is no evidence of fraud or misappropriation. In fact Selby, demonstrating good faith, made personal loans to Selby Construction to pay subcontractors, using a line of credit secured by his home. Absent segregation or earmarking of draws for payment, we cannot find a misuse or misapplication of those funds that would establish personal liability. Selby Construction had not been paid in full by HRGM; thus, funds were not available to pay Williams.

We construe the trust statute as not imposing personal liability merely upon the failure to pay subcontractors in full, absent fraud or misappropriation of funds. Where funds paid by contractors to subcontractors are earmarked for pay-

ment to a specific payee, but payment is not made, and those funds can be tracked, personal liability may be imposed. However, the mere insufficiency of funds to pay all down-the-chain subcontractors or suppliers is not a basis for the imposition of personal liability on the managing agent of the debtor contractor corporation.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; COSTS ASSESSED TO APPELLEES**