951 A.2d 94

Keith WALTER

v.

ATLANTIC BUILDERS GROUP, INC.

No. 218 Sept.Term, 2007.

Court of Special Appeals of Maryland.

June 30, 2008.

**350**

T. Bruce Hanley, Towson, for Appellant.

Louis J. Kozlawkowski, Jr. (Howard S. Stevens, Wright, Constable & Skeen, LLP, on the brief), Baltimore, for Appellee.

Panel: KRAUSER, C.J., JAMES R. EYLER and WRIGHT, JJ.

JAMES R. EYLER, Judge.

Atlantic Builders Group, Inc., a general contractor, appellee, entered into a contract with Harford County to build a public library. Appellee entered into a subcontract with United Aluminum Window Sales & Consulting, Inc. ("United Aluminum") to supply, *inter alia*, wall panels[1] and curtainwalls.[2] United Aluminum issued a purchase order to Alply, Inc. ("Alply") to supply the materials for the wall panels; issued a purchase order to X–Clad, Inc. ("X–Clad") to supply materials for the curtainwalls; and subcontracted with J & J Installations, Inc. ("J & J") to install the wall panels and curtainwalls. United Aluminum breached its contract with appellee.

---

1. Wall panels are copper veneer panels to be attached to the outside of masonry walls.

2. Curtainwalls appears sometimes as one word and sometimes as two words in the record. For consistency, we shall use one word. A curtainwall is the framing that hold glass, is self supporting, and can span multiple stories. It is essentially a wall of glass with framing.

Appellee filed suit in the Circuit Court for Harford County and obtained a judgment against United Aluminum for breach of contract, and a judgment against Keith A. Walter, appellant, managing agent of United Aluminum, for violation of the Maryland Construction Trust Statute, Maryland Code (2003 Repl.Vol., 2007 Supp.) §§ 9–201, et seq., of the Real Property Article ("R.P.").[3] The judgment against appellant was based on a finding by the circuit court, after a bench trial, that appellant misused funds received by United Aluminum for the benefit of United Aluminum's suppliers, Alply and X–Clad.

On appeal, appellant contends the court was clearly erroneous in finding that (1) appellee had sustained damages as a result of a violation of R.P. § 9–201; (2) appellee had not waived its claim for violation of R.P. § 9–201; (3) appellee had not entered into a new contract with Alply and X–Clad, thus releasing appellant from liability; (4) appellee, by requesting a judgment against United Aluminum, had not elected remedies, barring its claim against appellant; and, (5) appellee had proved "knowledge" sufficient to sustain a finding of liability under R.P. §§ 9–201—202.

Perceiving no reversible error, we shall affirm.

## Factual Background

Appellee and Harford County entered into a contract dated August 8, 2002, pursuant to which appellee agreed to construct the Abingdon Branch of the Harford County Public Library. The contract amount was originally $4,83 9,000.00 but, as a result of change orders, increased to $5,022,256.00. Appellee entered into a subcontract with United Aluminum dated September 17, 2002, pursuant to which United Aluminum agreed to supply, inter alia, labor and materials for the construction of "metal wall panels" and "glazed aluminum curtain walls." The contract amount was $775,000.00.

---

3. The contract for construction of the library was subject to the "Maryland Little Miller Act," Maryland Code (2006 Repl.Vol., 2007 Supp.) §§ 17–101, et seq., of the State Finance and Procurement Article, and thus, the Maryland Construction Trust Statute was applicable.

United Aluminum issued a purchase order to Alply to supply the materials for the wall panels at a price of $349,886.00 and issued a purchase order to X–Clad to supply the materials for the curtainwalls at a price of $131,098.00, which, as a result of change orders, increased to $138,080.00. United Aluminum entered into a subcontract with J & J to install the wall panels and curtainwalls for $78,000.00 ($33,-000.00 to install the wall panels and $45,000.00 to install the curtainwalls and the glass).

The contract between appellee and Harford County provided for monthly progress payments to appellee, subject to a retainage amount, and similarly, the contract between appellee and United Aluminum provided for progress payments to United Aluminum, subject to a retainage amount. The contracts detailed the amount of payments and their due dates.

By letter dated September 29, 2003, appellee advised United Aluminum that it had breached its contract with appellee in failing to provide labor and materials on schedule. After two more default letters, on December 22, 2003, appellee sent a "notice of termination" to United Aluminum, and on January 9, 2004, sent a "notice of termination second and final notice." Thereafter, appellee dealt directly with Alply, X–Clad, and J & J. The arrangements between appellee and Alply and between appellee and X–Clad were performed to all parties' satisfaction. Appellee paid Alply $115,000.00, which Alply agreed to accept even though it was owed $159,426.48. Appellee paid X–Clad $31,532.80, which it accepted even though it was owed $39,416.00. The agreement between appellee and J & J was not performed to the parties' satisfaction.

On June 8, 2004, appellee filed suit against United Aluminum and J & J for breach of contract and against Jeffrey S. Butcher as managing agent for both United Aluminum and J & J, and appellant as managing agent of United Aluminum, for violation of R.P. § 9–201. Subsequently, appellee dismissed the suit against Butcher.

During trial, the court entered summary judgment in favor of appellee against United Aluminum in the amount of

$250,000.00. The motion was expressly unopposed by counsel for United Aluminum and appellant, without prejudice as to appellant. Also during trial, appellee and J & J agreed to a settlement of the claim against J & J. Appellee's claim against appellant was tried, non-jury. The court found that appellant had violated R.P. § 9–201 and entered judgment against him in the amount of $146,533.00.

At all relevant times, appellant was a managing agent of United Aluminum.

We shall include additional facts as we discuss the issues.

### Discussion

1

At the outset, it is helpful to relate what the parties are and are not claiming. At trial, appellee limited its claim against appellant to breach of trust with respect to funds paid on behalf of two subcontractor suppliers, Alply and X–Clad. The claim did not include associated labor costs.

On appeal, appellant acknowledges that United Aluminum received funds from appellee to be paid to Alply and X–Clad, that some of those moneys were not used for that purpose, and that appellant was the managing agent of United Aluminum. Nevertheless, appellant contends that the court was clearly erroneous in finding that appellee had sustained compensable damages. Under appellant's analysis, appellee sustained no damages whatsoever and, in fact, enjoyed a gain as a result of the breach of trust.

R.P. § 9–201 provides, in pertinent part:

(b)(1) Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

R.P. § 9–202 provides:

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

Section 9–202 provides that a person liable under the statute is liable to "any person damaged by the action." The "action," in context, means retaining or using money held in trust for any purpose other than to pay the subcontractors for whom the money is held in trust.

In its oral opinion, the circuit court, in part, stated:

I do find and infer that [appellant] did retain or use the monies paid for the subs and were not fully paid, as we have explored through the evidence. In fact, there is corroboration that there is $124,000.00 of monies that is, in fact, unaccounted for.

As to the Statute, it does provide for personal liability to any person damaged. There is no question in my mind the plaintiff company was damaged in this case by the non payment to the subs of all the monies to which they were entitled.

To make a long story short, I find that the correct measure of damages in this case is the figure that totals $146,533.

It might have been helpful if the story had been a little longer, and the court had explained how it arrived at the amount of damages. As part of its agreement with Alply after terminating its contract with United Aluminum, appellee paid

$115,000.00 directly to Alply. Similarly, appellee paid $31,532.80 directly to X–Clad. As appellant observes, the combined post termination payments approximate the amount of the judgment, and it is possible that is how the court arrived at the amount. Another possible explanation for the amount is to subtract the difference between the total amount of money United Aluminum retained from appellee that should have been paid to X–Clad and Alply, which was $174,875.63 according to appellee's assertions, *see* discussion *infra,* from the total amount appellee paid directly to X–Clad and Alply, which was $146,532.80. If that difference, $28,342.83, is then subtracted from the total amount that was misapplied, the total is $146,532.80. Regardless, the evidence is sufficient to sustain the court's judgment.

The total price to construct the building, as between appellee and Harford County, was approximately five million dollars. United Aluminum subcontracted with appellee to "furnish and install all glazing, storefront, curtain wall and metal panels" for a contract price of $775,000.00. United Aluminum issued a purchase order to Alply to supply the wall panels for a price of $349,886.00 and issued a purchase order to X–Clad to supply the curtainwalls for a price of $131,098.00 (later increased to $138,080.00).

As previously mentioned, the contract between appellee and Harford County and the contract between appellee and United Aluminum provided for monthly progress payments based on specified work done to the date of the payment. The total contract prices were for fixed sums. Appellee requested its subcontractors, including United Aluminum, to submit a schedule of values for components of work. Appellee then used those schedules to establish its own schedule of values for components of work. The values and percentage of completion formed the basis of progress payments from Harford County to appellee and from appellee to its subcontractors.

Prior to termination of the contract between appellee and United Aluminum, appellee paid a total of $507,082.00 to United Aluminum. It held $56,343.00 in retainage amounts.

In the contract between appellee and United Aluminum, the value for the curtainwall materials was $222,500.00. In the same contract, the value of the wall panel materials was $380,000.00. According to appellant, appellee paid $230,700.00 to United Aluminum solely and $50,000.00 to United Aluminum and Alply jointly for the wall panels, and it paid $67,500.00 to United Aluminum solely and $85,000.00 to United Aluminum and X–Clad jointly for curtainwalls. According to appellee, it paid $271,650.00 to United Aluminum solely and $50,000.00 to United Aluminum and Alply jointly for the wall panels, and it paid $77,850.00 to United Aluminum solely and $85,000.00 to United Aluminum and X–Clad jointly for curtainwalls.

Appellant's argument with respect to computation of damages is as follows. First as to wall panels, appellee paid United Aluminum a total of $395,700.00 ($230,700.00 plus $50,000.00 jointly plus $115,000.00 paid after contract termination). The value of wall panels in the contract between appellee and United Aluminum was $380,000.00. The difference of $15,700.00 constitutes the damages with respect to appellant's breach of trust, as to that supplier.[4] As to curtainwalls, appellee paid United Aluminum a total of $184,032.80 ($67,500.00 plus $85,000.00 jointly plus $31,532.80 after contract termination). The value of curtainwalls in the contract between appellee and United Aluminum was $222,500.00. The difference of $38,467.20 constitutes a savings to appellee.[5]

Appellee takes a different view of the damages issue. Appellee states that the appropriate measure is to determine, as of the date of termination of United Aluminum's contract with appellee, the amount paid by appellee to United Aluminum for

---

**4.** Appellee asserts that it paid $271,650.00 to United Aluminum. The difference, as compared to appellant's number, appears to relate to a payment for shop drawings. If we used appellee's number and appellant's methodology, the damages would be $56,650.00.

**5.** Appellee asserts that it paid $77,850.00 to United Aluminum. The difference, as compared to appellant's number, appears to relate to shop drawings. If we used appellee's number and appellant's methodology, the difference would still constitute a savings to appellee.

the purpose of paying Alply and X–Clad, subtract the amounts United Aluminum actually paid to those suppliers, and add amounts paid by appellee to those suppliers post contract termination. Thus, in the case of Alply, appellee asserts United Aluminum retained $113,419.63 out of $271,650.00 that appellee paid to United Aluminum, and $113,419.63 constitutes damages. In the case of X–Clad, appellee asserts it paid United Aluminum $77,850.00 and United Aluminum paid X–Clad $16,394.00. The difference of $61,456.00 constitutes damages, for a total of $174,875.63.

Moreover, appellee points out that appellant conceded United Aluminum could not account for $124,775.10. According to appellee, when that amount is added to non-project payments made in the amount of $18,351.20, as shown by the evidence, the total comes to approximately $143,000.00, supporting the amount of the circuit court's judgment

Finally, appellee argues that damages should be determined by the amount appellee had to pay in excess of the amounts payable to Alply and X–Clad under their purchase orders. Thus, appellee subtracts $349,886.00 payable to Alply pursuant to its purchase order with United Aluminum from the amount of total payments made by appellee, $436,650.00, resulting in damages in the amount of $86,764.00. Similarly, appellee subtracts $131,098.00 payable to X–Clad pursuant to its purchase order with United Aluminum from the amount of total payments made by appellee, $194,383.00, resulting in damages in the amount of $63,285.00. The resultant total of $150,049.00 supports the trial court's award.

At trial, appellee also argued that the amounts paid to Alply and X–Clad post contract termination, totaling $146,532.80, would be an appropriate amount of damages.

In this case, appellee chose a contract theory of damages. We find the court acted within its discretion to determine how much of the total contract damages were caused by the breach of trust. *See Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.,* 889 S.W.2d 666, 674 (Tex.Ct.App.1994) (affirming jury award against contractor for actual damages arising from

contractor's breach of contract, wrongful interference with subcontractor's performance, and misapplication of trust funds).

As to the court's finding of damages, the evidence clearly permits a finding that United Aluminum received monies from appellee for payment to Alply and X–Clad that were not paid. The amount ranges from approximately $124,000.00 to approximately $174,000.00. The question then becomes the extent to which appellee was "damaged" as a result of the failure to pay. The main difference between the parties is that appellant argues it is entitled to have the values in its contract with appellee form the basis for computation, because the difference between those values and the amounts charged by the suppliers was profit to United Aluminum, and does not constitute damages to appellee. Appellee argues that the amounts charged by the suppliers to appellee forms the basis for computation.

Appellee sustained damages, allegedly approximating $495,000.00, but when reduced to judgment against United Aluminum, were in the amount of $250,000.00. Appellee's suit against United Aluminum and appellant, while based on two different causes of action, *see* discussion *infra* Part 4, claimed the same damages. Thus, the question is whether appellant is liable for all of the damages or some portion thereof, and if the latter, what portion. That answer turns on causation, which ordinarily is a question of fact.

The question is not necessarily determined by the values in the contracts. They were lump sum contracts with flexibility in determining specific values, the values determining where the "profit" would lie. Certainly, the values are very important in determining a trust violation and they are relevant to damages, as are all the circumstances relating to appellant's breach of trust as to Alply and X–Clad, and the effect of that breach. There was sufficient evidence to permit a finding that appellant's breach of trust contributed to appellee's total damages. The court did not expressly indicate how it arrived

at the amount of damages, but the amount is within the range that is supportable by the evidence.

The damages, however, are duplicative of the damages against United Aluminum. The damage award against United Aluminum in the amount of $250,000 included the amounts appellee paid directly to Alply ($115,000) and to X–Clad ($31,532.80). *See* discussion *infra* Part 4. Thus, satisfaction by United Aluminum of the judgment against it will operate to satisfy the judgment against appellant, or if satisfied in part, will operate to satisfy the judgment against appellant to the extent United Aluminum's judgment is satisfied. The converse is also true, i.e., if appellant satisfies the judgment against it, in whole or in part.

### 2

Appellant contends the court erred in finding that appellee had not waived its claim under the Maryland Construction Trust Statute.

Appellant relies on Article 11.1 in the contract between appellee and United Aluminum, a standard form contract promulgated by the American Institute of Architects. Section 11.1 provides:

ARTICLE 11 PROGRESS PAYMENTS

11.1   Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or

Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

Appellant argues that, by virtue of the above language, appellee waived its claim, which it was permitted to do by law because the statute does not expressly prohibit waiver and it is not against public policy.

■ When interpreting contracts, Maryland courts apply the "objective test." *See Roged, Inc. v. Paglee*, 280 Md. 248, 254, 372 A.2d 1059 (1977). The objective test of interpreting contracts is defined to mean:

The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake.

*Jones v. Hubbard*, 356 Md. 513, 534, 740 A.2d 1004 (1999) (quoting *Billmyre v. Sacred Heart Hosp. of the Sisters of Charity, Inc.*, 273 Md. 638, 643, 331 A.2d 313 (1975)).

■ We conclude that the language of the contract is clear and unambiguous, a question of law. Simply put, the contract states: "Nothing contained herein ... *shall create* any fiduciary liability or tort liability" (emphasis added), but it does not purport to waive liability for breach of trust existing outside of the contract, such as the Maryland Construction Trust Statute. *See In re Holmes*, 117 B.R. 848, 852 (Bankr.D.Md.1990) ("The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore is it is a

trust implied in law."); *see generally* 90 C.J.S. *Trusts* § 7 (2008) (explaining "express trusts depend upon intention, while implied trusts arise by operation of the law"). The court was correct in concluding that appellee had not knowingly relinquished a claim under that statute.

3

Appellant observes that, after appellee terminated its contract with United Aluminum, it entered into agreements with Alply and X–Clad to finish the project. Appellant argues that the agreements constituted "novations," thereby excusing United Aluminum from performance and barring appellee's claim for damages.

The elements of a novation are "(1) [a] previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution for it of the new one." *Leisner v. Finnerty*, 252 Md. 558, 564, 250 A.2d 641 (1969) (quoting *Dist. Nat'l Bank of Wash. v. Mordecai*, 133 Md. 419, 427, 105 A. 586 (1919)). Whether a novation has occurred is determined by the intention of the parties, and that intention may be gleaned from the surrounding circumstances. *Id.* at 565, 250 A.2d 641.

The evidence in this case was insufficient to establish novation as a matter of law. There is no evidence the parties intended the arrangements between appellee, Alply, and X–Clad to be in substitution for United Aluminum's obligations under its contract with appellee. In fact, the evidence is to the contrary.

The subcontract between appellee and United Aluminum contained a termination clause, which provided:

If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and

promptness, the Contractor may ... *terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient.*

(Emphasis added).

At trial, Mr. Josiah Zahn, appellee's project manager for the library construction project, testified that under the terms of the contract, if United Aluminum failed to perform and did not cure in a timely manner, appellee "would supply the manpower to cure the default at [United Aluminum's] expense." Counsel for appellant explained to the court that after United Aluminum failed to perform, United Aluminum instructed appellee (paraphrasing): " 'Go to our subs, cut your own deal, our suppliers are Alply and X–Clad, and cut deals with them, and get the materials finished,' instead of [appellee] going out and hiring another panel and another curtainwall subcontractor to finish this project." Mr. Zahn testified appellee did not enter into a new subcontract with either X–Clad or Alply, after terminating the contract with United Aluminum.

Appellant argues a facsimile communication between Alply and Harford County is evidence of the purported novation. This facsimile, dated January 29, 2004, was sent by "Chris Weiler" at Alply to "Mr. Ed Maley" at the Harford County Department of Public Works. In the facsimile message, Mr. Weiler explains that appellee had contacted Alply two months earlier, regarding the Harford County public library project, and that Alply then contacted United Aluminum and United Aluminum gave Alply permission to communicate with appellee. The facsimile states that Mr. Zahn, on behalf of appellee, communicated to Alply that appellee would send past due payments to Alply for the project, and that Mr. Zahn would send Alply "a request to change the Alply–United Aluminum Window Sales Consulting contract to an Alply–Atlantic Builders Group contract" in order to "insure the project was completed in the timeframe required." The facsimile then states: "Alply never received a request to change the contract, nor did we receive the past due money owed to us." The remainder of the facsimile describes correspondence between

appellee and Alply in November and December of 2003, and January 2004, regarding the library project.

Mr. Zahn testified that appellee settled with X–Clad for $31,532.50 for the balance of the materials to finish the Harford County library project, and that appellee settled with Alply for $115,000 to complete the work on the project, although both X–Clad and Alply were owed greater amounts. Additionally, Alply signed a "Conditional Waiver and Release of Progress Payment" regarding the library project, waiving any mechanic's lien, bond rights, or claim for payments against appellee and the county upon receipt of a check from appellee for $100,000, which Alply received. The waiver stated Alply retained its rights to collect monies owed by United Aluminum.

Under the terms of the subcontract between appellee and United Aluminum, appellee had a right to terminate the contract upon United Aluminum's non-performance and to finish the project by whatever method appellee deemed expedient. Upon United Aluminum's non-performance on the subcontract and appellee's subsequent termination of the contract, appellee communicated with X–Clad and Alply about finishing the project and directly paid the two subcontractors to finish the project. The evidence supports a finding that appellee's payments to X–Clad and Alply did not constitute a novation of the contract between appellee and United Aluminum. These payments were merely appellee's method of finishing the project in an expedient manner in order to minimize damages caused by United Aluminum's non-performance and breach. The court did not err in failing to find a novation.

4

As mentioned above, during trial, appellee moved for summary judgment against United Aluminum in the amount of $250,000.00. The motion was expressly unopposed by counsel for United Aluminum and appellant, without prejudice as to appellant.

■ In conjunction with the motion, counsel for United Aluminum and appellant consented to the introduction into evidence of exhibit 9, a summary prepared by appellee purporting to show its costs to complete the project, after termination of its contract with United Aluminum. The document reflected a "contract settlement" with Alply in the amount of $115,000.00 for a "total job cost" of $115,000.00, and a "contract settlement" with X–Clad in the amount of $31,533.00 for a "total job cost" of $42,520.00. Exhibit 9 reflected a total cost of completion in the amount of $1,270,107.27 which, after subtracting $775,000.00, the contract price with United Aluminum, resulted in $495,107.27 due appellee. Consequently, appellant observes that the judgment against United Aluminum included the payments made by appellee to Alply and X–Clad, the amount of the judgment entered against appellant. Appellant contends that, appellee having obtained a judgment against United Aluminum, appellee's action against appellant is barred by the election of remedies. We disagree.

During trial, in connection with the unopposed judgment entered against United Aluminum, counsel for United Aluminum and appellant stated the judgment "is entered without prejudice, Your Honor, to the remaining claims against Keith Walter, Your Honor, and also without prejudice to any defenses that he may have that could have been raised by [United Aluminum]." Arguably, appellant agreed to the pursuit of the claim against him, subject to United Aluminum's defenses, if any. We need not rest our decision on that ground, however.

■ The doctrine of election of remedies applies when a claimant has coexistent and inconsistent remedies, pursues one of them to final judgment, and then pursues the other remedy. *Surratts Assocs. v. Prince George's County,* 286 Md. 555, 568, 408 A.2d 1323 (1979); *Haynie v. Nat'l Gypsum Corp.,* 62 Md.App. 528, 533, 490 A.2d 724 (1985).

In this case, the remedies were cumulative, not inconsistent. *See Surratts Assocs.,* 286 Md. at 568, 408 A.2d 1323 (explaining remedies for past due taxes tax sale-redemption foreclosure and suit of assumpsit "are not inconsistent, but merely

cumulative," and holding election of remedies doctrine was not a bar to suit of assumpsit despite pending foreclosure proceedings); *see also Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 269 Md. 291, 301, 305 A.2d 465 (1973) (explaining "[t]he rule of irrevocable election does not apply where the remedies are concurrent or cumulative" (citation omitted)). The causes of action were different, but because appellee's alleged damages were one set of damages resulting from the failure of United Aluminum to complete its contract, appellee is only entitled to one satisfaction of those damages. The damages awarded against United Aluminum included the damages awarded against appellant. Thus, each judgment debtor is entitled to credit for amounts paid by the other.

### 5

Appellant contends the evidence was legally insufficient to sustain the court's finding that appellant "knowingly" retained or used monies held in trust under R.P. § 9–201.

■ This argument is without merit. Appellant testified that he was the executive vice president of United Aluminum and that he had control of the money disbursements for United Aluminum. Appellant testified that he paid "$140,000 and change" to Alply, out of the $250,950 that appellee had paid to United Aluminum for Alply's materials. Appellant testified that $16,394 was paid to X–Clad, out of slightly over $77,000 that appellee had paid to United Aluminum for X–Clad's materials.

Mr. Zahn testified that appellant had executed the contract with appellee on behalf of United Aluminum for the library project and that he had dealt with appellant on contract-related issues during the project. During trial on July 18, 2005, Mr. Zahn testified that appellant had been "picking up the checks and signing the waiver of liens saying he was paying his suppliers and subcontractors."

Copies of the checks that appellee issued to United Aluminum during the course of the library project were entered into evidence, and Mr. Zahn identified the endorsement signature

on some of these checks as being that of appellant's. Copies of the checks United Aluminum had issued to X–Clad and Alply and other subcontractors were entered into evidence, as well as the invoices and demands for payment that X–Clad and Alply had sent to United Aluminum regarding the library project.

To the extent that monies were received by United Aluminum for subcontractors, and not paid to them, the evidence permitted a finding that appellant had actual knowledge of the money flow.[6] *See In re McGee,* 258 B.R. 139, 149 (Bankr. D.Md.2001) (finding unpaid invoices for labor and materials furnished for construction projects conclusively proved existence of claims against debtors' corporation that should have been paid from monies held in trust; that the evidence demonstrated that trust fund monies went to other purposes and not to pay the claimants; and holding that corporate officer was therefore personally liable for claims under Maryland Construction Trust Statute).

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**6.** In *Selby v. Williams Const. Services,* 180 Md.App. 53, 948 A.2d 132 (2008), we recognized that when "funds paid by contractors to subcontractors are earmarked for payment to a specific payee, but payment is not made, and those funds can be tracked, personal liability may be imposed." *Id.,* at 64–65, 948 A.2d 132 *Selby* is distinguishable on its facts however, because there was no evidence that funds paid were earmarked for payment to a specific payee.