## BLANCHE W. WARWICK *v.* HARRY A. HARVEY.

[No. 91, October Term, 1929.]

*Decided January 24th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Emory H. Niles,* with whom were *Niles, Barton, Morrow & Yost* on the brief, for the appellant.

*J. Stanislaus Cook* and *Cornelius V. Roe,* with whom were *Heuisler, Cook & Cook* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Blanche W. Warwick appeals in this case from an order of the Circuit Court for Baltimore County, in equity, requiring the clerk to issue the writ of *habere facias possessionem* to the sheriff of said county, directing him to deliver possession of a certain lot held by her to Harry A. Harvey, the petitioner. The lot in question is part of a tract known as Cedarwood, in Baltimore County on the Frederick road near Baltimore City. On August 10th, 1927, Harvey sold the tract to William C. Moxley, who proceeded to develop it, ran a road through it, and divided the land on the east and west sides of the road into lots. On lots Nos. 13 to 21, inclusive, Moxley gave Harvey a mortgage for $10,000. This included lot No. 19, which is the subject of controversy in this suit. The mortgage contained a provision that the mortgagor, his heirs or assigns, could obtain partial releases, at any time before maturity of the mortgage or before default thereunder, by paying thirty dollars per front foot for each lot to be released, with the exception of lot number 19 "which may be released upon payment of the sum of twenty-five hundred dollars; interest on the amount so prepaid to be paid to the date of such prepayment."

Mrs. Warwick in 1928 informed Mr. Walter Ganster, whom she had known for a long time and who was connected with the Provident Building Association of Baltimore, of which her deceased husband had been treasurer, of her desire to buy a house. At his suggestion she looked at the Cedarwood property, which resulted in a contract by which Moxley agreed to sell her lot number 19 in fee, and to erect thereon before May 1st, 1928, a house, at the price of $6,500 for the house and lot. Certain extras later agreed on brought the total to be paid by Mrs. Warwick to $8,000. The house had been started at the time; Mrs. Warwick testified: "The frame work of the house was up. There was enough finished so that one could walk upstairs. It was not lathed but the frame work of the roof was on. The timber and flooring and stairs were in the house." She moved in in September, 1928, and the house was not completed until a month later. Five

hundred dollars was paid by her at the time of signing the contract, and it provided that all payments should be made upon the completion of the house, and that "as an aid to the financial completion of same the vendee agrees to guarantee the payment of materials and labor to the extent of two thousand ($2,000.00) dollars." Mrs. Warwick employed Ganster to look after the transfer of title and the release of the mortgage as to said lot, and he told her a deed and a release had been executed and duly recorded. It appears that a deed was executed by Moxley to Mrs. Warwick and her daughter about the middle of June, 1928, but it was never recorded, and seems to have been lost. The uncontradicted evidence shows that more than $8,000 of Mrs. Warwick's money went into the construction of this house, and that it added $4,000 to the value of the lot. Harvey and his agent testified, and there is no evidence to the contrary, that they knew nothing of this contract or of Mrs. Warwick's connection with the property, until after the suicide of Ganster in September, 1928. Although money was given him for this purpose, Ganster paid nothing on account of the mortgage to secure the release of lot number 19, and of course did not obtain a release, but this was not discovered by Mrs. Warwick until after his death.

The mortgage was in default at the date of the above mentioned contract by reason of the failure of Moxley to make a payment of $500 on account of the principal on November 10th, 1927, and interest due on that date. There was an additional default in payment of principal and interest due on February 10th, 1928, but the mortgagee did not foreclose because of the improvements being made on the property. He testified: "I knew this improvement was going on the land. I thought the more improvements Moxley had there, the more likely Moxley was to make a profit and be able to pay me. I would not change the terms of the mortgage when Moxley wrote me on July 11th, 1928. I thought, until after Mr. Ganster's death, that Mr. Moxley was making the improvements." Moxley's request in the letter referred to was for a release of lot No. 19 on payment of $1,000. He was

told he could not get a release of the lot unless he paid the principal and interest then due, amounting to $1,450, in addition to the $2,500 partial release charge.

After Mrs. Warwick discovered that the lot had not been released she offered to pay $2,500 for a release but the offer was refused, but the mortgagee offered to assign his mortgage to her.

The mortgage was subsequently foreclosed and the entire mortgaged property bought in by the mortgagee for $3,500, the sale was finally ratified, and the property conveyed to him. On refusal of Mrs. Warwick to deliver possession of lot No. 19, a petition for the writ of possession was filed, to which an answer was filed, alleging that it would be inequitable and against the conscience of the court to allow the petitioner to obtain the benefit of the improvements made by the respondent in good faith upon land which she believed to be hers, and to eject her from the possession of her home, and to use this process of the court to take an unfair advantage of her and work a hardship upon her, without requiring the petitioner to compensate her, when by acceptance of respondent's offer to pay the sum provided in the mortgage for the release of said lot the petitioner would suffer no loss but would be placed in the same position that he would have held if the mortgagor had carried out the terms of said mortgage. The prayer of the answer is: (1) That the application for the writ be denied. (2) That the petitioner be required to execute a deed to the respondent for said lot upon payment to him of $2,500 or such sum as the court may deem just and equitable. (3) That petitioner be enjoined from interfering with respondent's quiet possession of said lot and the improvements erected thereon by her unless he shall compensate her for said improvements in such amount as the court shall determine to be fair and equitable. (4) That petitioner be required to pay respondent such compensation for said improvements as the court shall determine to be fair and equitable. (5) For general relief.

We think the chancellor was in error in refusing relief to the appellant.

The equitable doctrine of "melioration" or compensation for improvements has for a long time been recognized in this state. Mr. Perkins in a note to *McLaughlin v. Barnum*, 31 Md. at page 427, says: "There is no doctrine of equity better established than that a *bona fide* purchaser is entitled to an allowance for improvements when he is the defendant, and the rightful owner seeks the aid of a court of equity to recover rents and profits, or to enforce his title". And he is fully supported by the cases cited by him, viz: *Union Hall Association v. Morrison*, 39 Md. 281; *Eichelberger v. Hawthorn*, 33 Md. 588; *Evans v. Horan*, 52 Md. 602; *Broumel r. White*, 87 Md. 521.

*Jones v. Jones*, 4 Gill, 87, in its facts and recognition of the law applicable to them is much in point. Mr. Brantly in his note to that case, says:

"Compensation for Improvements. The rule at law is '*quicquid solo, solo cedit*'. But the equitable doctrine that a *bona fide* possessor of land, though under a mistake as to the real condition of the title, who makes permanent improvements upon the property, is entitled to compensation for them, when the true owner seeks the aid of equity to enforce his rights, was early recognized in Maryland. See *Quynn v. Slaius*, 3 H. & McH. 128." All that is required to entitle a defendant to claim this equity is that he be a *bona fide* occupant or possessor, and not a mere tort feasor or *mala fide* intruder, holding with full knowledge of his own position and of the adverse claim. *McLaughlin v. Barnum*, 31 Md. 454. See also *Hagthorp v. Hook*, 1 G. & J. 270; *Smith v. Townshend*, 27 Md. 368. The doctrine is well stated by Mr. Tiffany in the 1920 Edition of his work on Real Property, page 923. We have found no case in Maryland in conflict with this view.

*Bryan v. Councilman*, 106 Md. 380, is thought by appellee to set a standard which the position of appellant does not meet. There this court said: "Now to entitle the party claiming to a standing even in a court of equity there must be three concurrent essentials.

1. He must have held possession under color of title;

2. His possession must have been adverse to the title of the true owner; 3. He must have acted in good faith.

It is to be observed, in considering this case: (a) That the decision is based on the finding that the claimant had *actual knowledge* that she had no title or right of possession, and (b) that there is not the slightest indication that the court intended to modify a long line of earlier decisions. Keeping these considerations in mind, "color of title", as used in that case, could mean nothing more than an apparent right to deal with the property as one's own. In the present case, the contract of sale with Moxley, and a payment on account of the purchase money, and the concurrence of Moxley (Mrs. Warwick being in ignorance of an outstanding claim of the mortgagee), gave her color of title, in the sense that must have been intended in that case.

"Holding adversely", as there used, could mean nothing more than holding in ignorance of the interest of the true owner, if that case is to be reconciled with all other Maryland decisions. It is not contended that appellant did not act in good faith.

The learned chancellor seems to have based his decision mainly on the ground that appellant had constructive notice of the mortgage by its recordation and the absence of a recorded release. But we think *Broumel v. White,* 87 Md. 521, is authority for the contention of appellant that such constructive notice was not enough to disentitle appellant to compensation. See also *Canal Bank v. Hudson,* 111 U. S. 66; *Searl v. School District,* 133 U. S. at page 553; note to Ann. Cas. 1916B, page 61.

It remains only to consider on what basis the rights of the parties are to be determined on the facts of this case. It does not present a question of estoppel as against appellee, but the principle is that it would be inequitable and against good conscience to permit him to be enriched at the expense of an innocent purchaser for value, without notice, and exercising reasonable care. The mortgagee's rights must be fully protected, and he must not be put to a disadvantage in order to protect the purchaser. If the house had been

completed at the time of the purchase, the purchaser would have taken it subject to the lien of the mortgagee. It follows, therefore, that she cannot claim compensation for the value added to the lot, so far as the increase in value is represented by the work which had been done prior to the contract of sale, but only to the extent of the increase in the vendible value of the property due to such part of the improvements as were made after the date of the contract of sale. The case will be remanded so that this can be ascertained. And, when ascertained, appellee should be required to pay that amount to appellant, or, at his option, to convey the lot to her on payment by her of such amount as the court shall find to have been, at the time of the foreclosure of the mortgage, the value of the lot without such improvements as were made by her after the date of the contract of sale.

It should be clear from what we have said that our conclusion rests on the facts of *this case*. It is not to be taken as a precedent except in those cases where the principle can be applied without prejudice to any rights which the holders of legal titles, in equity and good conscience, can assert.

*Order reversed and case remanded, with costs to appellant.*

OFFUTT and PARKE, JJ., dissent.