DAVID N. GOLDBERG, ET AL., *v.* JAMES W. FORD, ET AL.

[No. 150, October Term, 1946.]

*Decided June 11, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Albert A. Doub, Jr.*, and *John M. Robb* for the appellants.

*Horace P. Whitworth, Sr.*, and *Wilbur F. Galbraith* for the Mt. Savage Refractories Co.

HENDERSON, J., delivered the opinion of the Court.

The Mount Savage Refractories Company owns a certain tract of land with an underlying coal deposit in Allegany County, Maryland, near its brickmaking plant at Mt. Savage. It had never worked any of this coal, and had knowledge that it was of an inferior grade. However, due to an active export demand for low-grade coal, on March 22, 1946, it entered into a written lease agreement with James W. Ford and George E. Ford, trading as the Ford Coal Company, whereby the latter acquired the right to strip-mine some thirty acres, upon payment of a royalty of twenty-five cents per ton. The agreement called for a minimum royalty of $750 per month, beginning May 1, 1946, whether coal was mined or not. It provided that the Ford Company should not assign or sublet, without the written assent of the lessor, that the lease should terminate upon violation of any covenant by the lessees, and that the lessees should furnish a surety bond for faithful performance, in the sum of $5,000.

Disputes arose between the parties, and no coal was mined under this original agreement.

On July 1, 1946, a supplementary agreement was executed. The original agreement was reaffirmed, with the following changes: the royalty payments were increased from twenty-five cents a ton to twenty-nine cents a ton, beginning July 1, 1946, the lessor waiving past-due monthly payments for May and June, the minimum royalty was increased from $750 per month to $1,450 per

month, and the performance bond was required to be given on or before July 8, and increased from $5,000 to $10,000 on or before September 1, 1946.

The Ford Company, in June, 1946, had negotiated with David N. Goldberg, Angelo Franciose and Ralph Franciose, trading as Dorothy Coal Company, to perform the work of stripmining the tract in question. On July 12, 1946, these parties entered into a written agreement, whereby the Dorothy Company, contractor, agreed to uncover the deposit and load the coal mined into trucks supplied by the Ford Company. The latter agreed to pay the contractor $2.08 per ton "for all merchantable and marketable coal loaded on the trucks in the pit." The Dorothy Company, during July and August, cleared about two acres of the tract, removing the surface to a depth of ten or more feet, and began to load coal, but after only 286 tons had been loaded, the Ford Company failed to provide trucks, and on September 8, 1946, the operation came to a standstill. A few weeks later the contractor moved its equipment to other locations. On September 28, 1946, the Dorothy Company filed a bill of complaint in the Circuit Court for Allegany County, in Equity, against the Ford Company and The Mount Savage Company, alleging that they had uncovered about 8,000 tons of coal and incurred expenses of approximately $18,000 on the faith of their contract with the Ford Company, and to that extent had increased the value of the land and coal to the Mount Savage Company. They alleged that although able and willing to load coal they were prevented by the refusal of the Ford Company to furnish trucks. They alleged that the Mount Savage Company knew of the operations of the complainants and that these were carried on with its consent and approval; that they were credibly informed that the Mount Savage Company, working in conjunction with the Ford Company intended to cancel the lease and sell the coal to other parties. They prayed relief by way of injunction against both defendants, and that the Court declare the complainants entitled to an equitable

lien upon the coal in place, belonging to the Mount Savage Company, for the value of their services in uncovering the coal and making it available for loading. The Ford Company filed a combined demurrer and answer to the bill. The Mount Savage Company answered, denying any collusion or combination with the Ford Company. On October 21, 1946, the Mount Savage Company filed a cross-bill against the Ford Company and the Dorothy Company, setting up various breaches of the lease agreement by the Ford Company, praying for a declaration of its rights in the premises, and praying that both cross-defendants be restrained from entering upon its premises and further mining its coal. Thereafter, both parties filed answers to the cross-bill.

In this state of the pleadings and with motions to dismiss the original injunctions against the Ford Company and the Mount Savage Company, and with a demurrer to the original bill still undisposed of, as well as the issues raised by the cross-bill, the court indicated that it would dispose of the whole case at one time. After hearing testimony and argument, the court passed a decree on November 30, 1946, dismissing the original bill of complaint, without prejudice to the Dorothy Company pursuing any remedy at law they might have against the Ford Company, and rescinding its restraining orders. The decree further declared the Mount Savage Company entitled to the relief prayed in its cross-bill, and issued an injunction against the cross-defendants. The case comes here on appeal by the partners of the Dorothy Company.

The appellants' sole contention is that the decree of the chancellor should not have been passed except upon condition that the Mount Savage Company pay to the complainants an equitable sum to reimburse them for the labor and improvements laid out by them upon the lessor's land. They claim a right to restitution, upon the theory of unjust enrichment, enforcible by way of an equitable lien upon the property.

It is clear from the record in the case that there was no foundation for the charge in the original bill of a combination between the original defendants to work a cancellation of the lease and thus defeat the contract rights of the complainants. There was no evidence whatever that the Mount Savage Company attempted to impair or delay performance by the Ford Company, so far as mining and removing coal was concerned. The relief prayed in the cross-bill was predicated upon a failure on the part of the Ford Company, the only party contracting with the cross-complainant, to perform its agreement by mining coal as agreed, failure to pay the stipulated minimum royalty, and failure to furnish any performance bond or other security. These allegations were not contested. According to the undisputed testimony, the Ford Company is insolvent and without assets. The testimony as to the reason why the Ford Company failed to furnish trucks is somewhat conflicting. On the one hand, it was testified that this was due to an embargo "on that type of coal * * * that was being shipped overseas," or an "embargo on the cars." On the other hand, there was testimony that the coal was of such inferior quality that the broker, Sherman, refused to accept delivery. In the view we take of the case, the cause of the stoppage is not material; it is perfectly clear that it was not brought about by any act on the part of the Mount Savage Company.

Upon default of the Ford Company to comply with the provisions of the lease, the lessor had an unqualified right under its lease agreement to re-enter and take possession of the coal that remained unsevered from the realty. It was shown that the Dorothy Company had knowledge of the provisions of the lease. There was no mistake or confusion as to the title to the property, and no charge of fraud. The Dorothy Company had no rights whatever in the land, but merely a contract with the lessee. We are aware of no equitable principle that would impose a lien under such circumstances. In the somewhat analogous situation, where labor and ma-

terial is furnished by a sub-contractor for improvements to property, it is only by virtue of statute (Code, Art. 63) that a remedy is available. *Maryland Cas. Co. v Lacios*, 121 Md. 686, 690, 89 A. 323. If recovery could be had in Equity in such a case, there would have been no need for such legislation.

The appellants contend that compensation should be allowed, by analogy to two distinct lines of cases. One line is illustrated by the case of *Warwick v. Harvey*, 158 Md. 457, 148 A. 592, 68 A. L. R. 284. In that case, where a *bona fide* purchaser of land erected a dwelling thereon, in ignorance of an outstanding mortgage that was subsequently foreclosed, the equity court allowed the purchaser compensation to the extent of the increase in the vendible value of the property due to the improvements, under the equitable doctrine of "melioration." The court cited the earlier case of *Bryan v. Councilman*, 106 Md. 380, 67 A. 279, 14 Ann. Cas. 1175, for the rule that there must be three concurrent essentials: 1. He must have held possession under color of title; 2. his possession must have been adverse to the title of the true owner; 3. he must have acted in good faith. See also, *Stewart v. Wheatley*, 182 Md. 455, 461, 35 A. 2d 104; *Union Hall Ass'n v. Morrison*, 39 Md. 281; *Jones v. Jones*, 4 Gill. 87, and notes thereto. The rule in Maryland is more liberal than that obtaining in most jurisdictions. Compare *Restatement, Restitution*, Sec. 42, and cases cited in the Reporters' notes thereto. Compensation has also been allowed in some instances upon revocation of a license. *Brehm v. Richards*, 152 Md. 126, 136 A. 618, 56 A. L. R. 1103.

In the instant case it is clear that the contractor had actual knowledge of the provisions of the lease and the interest of the true owner. In *Pomeroy, Equity Jurisprudence*, 5th Ed., Secs. 1241, 1242, it is said: "If the owner stands by and suffers the occupant, without notice of his title, and acting in innocent mistake, to make repairs and improvements, he will be compelled in equity to repay the amount thus expended, and the claim for re-

payment will constitute an equitable lien on the property. * * * In all these cases, however, the element of good faith and innocent mistake is essential, for if a person lays out money on another's property with knowledge or notice of the true state of the title—*e.g.*, a purchaser with notice of another's claim—he has no claim to be reimbursed, and of course no lien." Compensation is also generally denied in cases of encroachment. *Cityco Realty Co. v. Slaysman*, 160 Md. 357, 363, 153 A. 278, 281, 76 A. L. R. 296. In that case it was said: "Fraud, actual or constructive, in some form, is an essential ingredient of the doctrine of equitable estoppel." This doctrine has been applied in some instances, where permanent improvements were made by a tenant and there was evidence of a waiver by the landlord. *Swartz v. Meier*, 136 Md. 72, 110 A. 202; Compare *Carmine v. Bowen*, 104 Md. 198, 64 A. 932, 9 Ann. Cas. 1135; and note 76 A. L. R. 304. These cases are readily distinguishable from the instant case.

The other line of cases relied upon by the appellant deals with recovery for services rendered or improvements made, on the theory of implied contract. *Houston v. Monumental Radio*, 158 Md. 292, 303, 148 A. 536; *Robinson Const. Co. v. Barry*, 135 Md. 275, 108 A. 688. But we find no evidence of a promise to compensate in the instant case. It is not even clear that the contractor would have any right of action against the lessee; that right would depend upon whether the coal was in fact marketable, or whether the defense of impossibility of performance could be invoked. Compare *Fast Bearing Co. v. Precision Development Co.*, 185 Md. 288, 44 A. 2d 735. There was no privity of contract between the lessor and the contractor. The appellants argue that they should be subrogated to the rights of the lessee. Even assuming, without deciding, that a right of subrogation could be maintained under the circumstances, we think the facts would not support a claim to compensation by the lessee, who breached the lease agreement in substantial particulars, without any waiver on the part of

the lessor. All of the provisions of the lease point to the necessity of prompt performance, probably because of the instability of the market demand for low-grade coal. In any event, such provisions were not unreasonable or inequitable, and they were accepted by the lessee as a part of the business risk. We think the Chancellor was clearly right in declaring the lease forfeited and in issuing the injunction as prayed in the cross-bill.

*Decree affirmed, with costs.*