FREEFORM POOLS, INC. *v.* STRAWBRIDGE HOME FOR BOYS, INC. ET AL.

[No. 199, September Term, 1961.]

*Decided April 12, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*M. Peter Moser,* with whom were *Lloyd M. Gerber, Lawrence I. Weisman, Nyburg, Goldman & Walter* and *Arnold Fleischmann,* on the brief, for appellant.

*Donald M. Smith,* with whom were *A. Earl Shipley* and *T. Lyde Mason* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

The appellant, plaintiff below, appeals from an order of the Circuit Court for Carroll County sustaining without leave to amend the demurrer of defendant, Strawbridge Home for Boys, Inc. (Strawbridge), to plaintiff's bill of complaint to enforce a mechanics' lien or to impose an equitable lien on

defendant's property for work performed and materials used to construct a swimming pool, fence, concrete deck, and other appurtenant structures. The facts, well pleaded in the bill of complaint, and exhibits filed therewith, which are admitted as true for the purposes of this demurrer, are as follows:

The appellant, (Freeform), is a contractor engaged in the building of swimming pools, as well as other buildings and structures required in connection therewith, such as bathhouses, concrete walkways, fences, filter systems, and filter houses. Strawbridge was the record owner of legal title to a tract of land consisting of about 318 acres, on which Freeform seeks to enforce a lien.

Prior to March 28, 1960, Strawbridge entered into a contract of sale by which Carrollton Farms, Inc. (Farms) purchased that tract of land, and subsequently Farms entered into a contract with Carrollton Golf and Country Club, Inc. (Country Club) by which Country Club purchased part of that land. With the knowledge and acquiescence of Strawbridge, Farms and Country Club thereafter advertised and held themselves out to be the legal owners of the tract and its developers as a country club, although Farms and Country Club were only the equitable owners of the tract.

In March of that year, with the knowledge, acquiescence, and participation of Strawbridge, Country Club, representing that it was the legal owner of the tract, commenced negotiations with Freeform for the construction of a swimming pool and other structures on the tract, as the result of which a contract was executed on March 28, 1960. By it Freeform agreed with Country Club, as owner of the tract, to build a pool, fence, and concrete deck for a total sum of $43,000.

In May, 1960, Freeform, in reliance upon the ownership representations made by Country Club and Farms, began to build the swimming pool. From then until active construction ceased about May 31, 1960, Freeform expended its money, labor, and materials for that purpose, including overhead and profit pursuant to the contract, to its damage in the amount of $15,862.25 in excess of the $8,000 paid Freeform by Country Club on account of the contract. On August 15, 1960,

Country Club and Farms defaulted on the contract to purchase the tract.

On November 16, 1960, Freeform recorded a mechanics' lien, for work done and materials and equipment furnished on said tract of land at the instance and request of Country Club and Farms with Strawbridge's knowledge and acquiescence, but the lien has not been paid, and Freeform claims it is entitled to a decree for the enforcement thereof.

In its opinion the lower court stated as its only reason for sustaining the demurrer that a mechanics' lien exists "only by virtue of the statute" and there can be no lien for anything that does not fall within the statutory provision, and further, that in its opinion a mechanics' lien "cannot be obtained for the construction of a swimming pool."

As we read the record there are only two questions presented which are necessary to the decision in this case. They are: I, is a swimming pool a lienable item within the mechanics' lien law, and II, under the allegations of the bill of complaint, supported by the exhibits filed therewith, could the appellant be entitled to an equitable lien?

I

Code (1957), Article 63, §1, the mechanics' lien law, provides in pertinent part as follows:

> "Every *building* erected and every *building* * * * improved to the extent of one-fourth its value * * * shall be subject to a lien for the payment of all debts contracted for work done for or about the same, and for materials furnished for or about the same, including the drilling and installation of wells for the purpose of supplying water, the sodding, seeding or planting in or about the premises, of any shrubs, trees, plants, flowers or nursery products of any kind or description and the grading, filling, and landscaping thereon." (Emphasis supplied.)

It is the contention of the appellant that the swimming pool under construction was a "building" or at least an "improvement" to a building so as to come within the meaning of the

words "building" and "building improved" as used in the statute.

While it is true that under the mechanics' lien law, *supra,* § 32, the law is remedial and under the decisions of this Court is to be construed in the most liberal and comprehensive manner in favor of mechanics and materialmen. *Reisterstown Lumber Co. v. Reeder,* 224 Md. 499, 507, 168 A. 2d 385, and cases there cited, Courts have no power to extend it to cases, beyond the obvious designs and plain requirements of the statute. *Basshor v. B. & O. R.R. Co.,* 65 Md. 99, 103, 3 Atl. 285. A mechanics' lien is a claim created by statute and is obtainable only if the requirements of the statute are complied with. *Adkins & Douglas Co. v. Webb,* 160 Md. 571, 154 Atl. 259, and cases collected in 15 M. L. E., *Mechanics' Liens,* §§ 1, 2, and 3. There is no definition in the mechanics' lien law of the word "building." Taken in its broadest sense it can mean only an erection intended for use and occupancy as a habitation, or for some purpose of trade, manufacture, ornament, or use, such as a house, store, or a church. 5 Words and Phrases, 892. In Black, Law Dictionary (4th ed. 1951) definitions of "building" are given as follows:

> "[A] fabric, structure, or edifice, designed for the habitation of men or animals or for the shelter of property"; and
>
> "The term generally, though not always, implies the idea of a habitation for the permanent use of man, or an erection connected with his permanent use"; and
>
> "The identity or difference of meaning of the words 'building', 'improvement' and 'structure' depends upon context in connection with which they are used."

A swimming pool according to Webster's New International Dictionary (2nd ed.) is "a pool, especially an artificial pool or tank in a gymnasium, adapted for swimming." Clearly then it can not be said that it is a "building" within the broadest meaning ascribed to that word within a mechanics' lien statute. The word "building" can not be said to include every type of structure on land.

It is significant that throughout the legislative history of the mechanics' lien law in Maryland the law has been repeatedly amended to include specific lienable structures. For example, more recently a mechanics' lien has been made applicable to grading, landscaping, nursery products, shrubs, and wells. This clearly indicates that the Legislature has never intended that the law be stretched to include within its scope structures which were not clearly within the definition of the items included. If swimming pools are to be lienable it is for the Legislature to specifically include them and not for the courts to extend the provisions of the mechanics' lien law by judicial interpretation.

We, therefore, agree with the chancellor's ruling that a mechanics' lien can not be obtained for the construction of a swimming pool.

II

There remains for consideration the question of whether under the allegations of the bill of complaint, or any possible amendment to it, the appellant would be entitled to the enforcement of an equitable lien upon the appellee's property. We think the answer to this question must be in the negative.

A mechanics' lien was unknown at common law, nor was it allowed in equity. 57 C.J.S., *Mechanics' Liens,* § 1; Bloom, *Law of Mechanics' Liens,* § 4; 1 Rockel, *Mechanics' Liens,* §§ 1 [1] and 2. While it may be said that a mechanics' lien rests upon an equitable basis, yet without the benefit of a statute a court of equity can not assume jurisdiction. 1 Rockel, *supra;* 2 Jones, *Liens,* § 1561. The jurisdiction of a court of equity in the case of a statutory lien derives from the statute and can extend no further. 1 Jones, *Liens,* § 112.

In the case of *United States of America v. Eisinger,* 202 Md. 613, 619, 98 A. 2d 81, this Court in commenting upon mechanics' liens, quoted with approval the language in the opin-

1. It is interesting to note that the first mechanics' lien law enacted in the United States was enacted by the General Assembly of Maryland in 1791 at the urging of Thomas Jefferson and James Madison, who championed such legislation to stimulate and encourage the rapid building of the City of Washington.

ion of Judge Henderson in the case of *Goldberg v. Ford,* 188 Md. 658, 53 A. 2d 665:

> " '* * * where labor and material is furnished by a subcontractor for improvements to property, it is only by virtue of statute (Code, Art. 63) that a remedy is available. *Maryland Cas. Co. v. Lacios,* 121 Md. 686, 690, 89 A. 323. If recovery could be had in Equity in such a case, there would have been no need for such legislation.' "

Clearly then, the appellant having failed to meet the requirements of the mechanics' lien law, must also fail in its effort to establish an equitable lien, since the statute is the source from which the lien for labor and materials is derived and it can only exist when a statute allows it.

We have been referred to no case in Maryland, nor has our research revealed any, which has held that a material man may seek relief under the mechanics' lien law or, in the alternative, enforce an equitable lien where his claim to a mechanics' lien failed. We think that the intention of the Legislature in passing the mechanics' lien law was to embrace within that statute all rights to a lien of such character upon real estate not previously known either at common law or in equity.

We think the demurrer was properly sustained without leave to amend, not only for the reasons stated by the chancellor, but, in addition, because the bill did not state a case for the enforcement of an equitable lien, nor could the bill be amended to invoke such a lien.

*Order affirmed, with costs.*