*C & B Construction v. Dashiell et al.*
Case No. 1307, September Term, 2016

## HEADNOTES

**STATUTES – MARYLAND CONSTRUCTION TRUST LAW – APPLICABILITY OF SUBTITLE**

The Maryland Construction Trust Statute applies only in cases in which either the Maryland Little Miller Act or Maryland's mechanics' lien statute, codified at Md. Code (1974, 2015 Repl. Vol.), Real Property Article, § 9-102, also applies.

**STATUTES – PRINCIPLES OF STATUTORY CONSTRUCTION**

Many issues of statutory construction are resolvable on the basis of three factors: (1) text; (2) purpose; and (3) consequences. All three factors support the conclusion that the Maryland Construction Trust Statute applies only to contracts that would be covered by the mechanics' lien law or the Little Miller Act.

Circuit Court for Wicomico County
Case No. 22-C15-1518

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1307

September Term, 2016

_____

C & B CONSTRUCTION, INC.,

v.

JEFFREY DASHIELL, *et al.*

_____

Nazarian,
Beachley,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  November 1, 2017

This is a dispute over the nonpayment for construction work performed by subcontractor, appellant C & B Construction ("C & B") for general contractor Temco Builders, Inc. ("Temco"). At the heart of this case is whether C & B may employ the Maryland Construction Trust Statute, Md. Code (1974, 2015 Repl. Vol.), Real Property Article (RP) § 9-201 *et seq.*, to hold officers of Temco, appellees Vice President Jeffrey Dashiell ("Dashiell") and President Edward J. Maguire ("Maguire"), personally liable for money owed to C & B by Temco. After C & B concluded its case at a bench trial in the Circuit Court for Wicomico County, Dashiell and Maguire filed a motion for judgment, which the circuit court granted based on its finding that RP § 9-204(a)[1] did not permit C & B to hold Dashiell and Maguire personally liable. The key issue we must address, therefore, is whether the applicability clause in § 9-204(a) required C & B to establish that its subcontracts were subject to either the Little Miller Act or the mechanics' lien statute. If the Construction Trust statute does apply, C & B asks us to address whether the circuit court erred in granting judgment to Dashiell and Maguire, despite evidence showing that Temco had been paid by the owners in full or in large part based on Temco's applications for payment.

## BACKGROUND AND PROCEDURAL HISTORY

On six construction projects located across Maryland, C & B performed various drywall, ductwork, and other related construction work as part of a subcontract with

---

[1]     Section 9-204(a) states: "This subtitle applies to contracts subject to Title 17, Subtitle 1 of the State Finance and Procurement Article, known as the "Maryland Little Miller Act", as well as property subject to § 9-102 of this title."

Temco. According to C & B, for five of the six projects, C & B completed all of its obligations under the subcontract with Temco, and Temco was paid by the owners for all or the majority of the work performed by C & B. However, Temco failed to pay C & B for the work it performed. Additionally, on a sixth project, C & B alleged that Temco owed C & B for work for which Temco had received credit against a debt to another company, but failed to pay C & B. Neither party disputes that Temco failed to pay C & B for work performed under the subcontracts. According to C & B, rather than paying C & B for the work it performed, Dashiell and Maguire spent the money they received from the project owners by paying other subcontractors and Temco office expenses, or by repaying themselves for money they had put into the business.

On October 1, 2015, C & B filed a complaint in the Circuit Court for Wicomico County against Temco, as well as Dashiell and Maguire individually. For each of the six projects, C & B alleged breach of contract against Temco and sought to hold Dashiell and Maguire individually liable under the Maryland Construction Trust Statute.[2] C & B's claims against Dashiell and Maguire included primarily three allegations: (1) "During the course of the Project, the owner paid Temco for labor and materials supplied to the Project by C&B" and "Temco held these monies in trust for C&B"; (2) "Defendants Maguire and Dashiell, as officers/managing agents for Temco, had direction over and control of the monies held in trust by Temco for the benefit of C&B"; and (3) "Defendants Maguire and Dashiell used and/or retained the monies held in trust for C&B for purposes other than to

---

[2] The Maryland Construction Trust Statute ("Construction Trust statute") is codified in RP § 9-201, *et seq.*

2

pay C&B for the materials and labor it supplied to the Project." For the six projects for which C & B alleged it was not paid for work performed, C & B sought a total of $218,349.90.[3]

On May 3, 2016, Temco entered into a consent judgment with C & B, agreeing to the entry of an award against it in the amount of $225,607.00.[4] C & B's claims against Dashiell and Maguire, however, proceeded to trial on July 13, 2016. At the conclusion of C & B's case, the Temco officers moved for judgment, asserting that the Construction Trust statute did not apply in this case, because the subcontracts were not subject to either the Little Miller Act or the mechanics' lien statute.[5] After hearing argument, the Circuit Court Judge Donald C. Davis agreed with Dashiell and Maguire, noting:

> [I]t seems to me really looking at the Statute and Section 9-204(a) . . . , it applies to contracts under the Maryland Little Miller Act, and there is no contention that any of the contracts in this case would be subject to the Maryland Little Miller Act as well as properties subject to 9-102 of this Article which is the Mechanics Lien Statute.
>
> And the only way to know whether the property is subject to 9-102 is for evidence to be provided that it is subject to 9-102,

---

[3]     C & B claimed that Temco received a total of $218,349.90 for work that C & B performed under the six contracts.

[4]     Temco, therefore, was no longer a party to the proceedings, as it had already admitted that it owed C & B the full amount of all six contracts -- $225,607.00. C & B -- apparently unconvinced that Temco would satisfy the consent judgment -- continued to pursue its claims against Dashiell and Maguire individually for the money that C & B claimed Temco was paid by the project owners. Pursuant to the Construction Trust Statute, officers are individually liable only for the funds that have been paid to the contractor by the project owner -- that is, the smaller amount, $218,349.90, not the larger amount, $225,607.00.

[5]     The mechanics' lien statute is codified at RP § 9-101 *et seq*.

3

which I am just going to shorten it up and say that it's either basically new construction or every building repaired, rebuilt or improved to the extent of 15 percent of its value.

And in this case, I have looked at the contracts, and there is nothing to indicate that the contracts are for any of the other exceptions. [ . . . ]

There is no way for the Court to make any judgment as to whether or not that improvement is to the extent of 15 percent of the value of the project.

And as I said, there is no way for the Court to infer that[,] because there is no evidence that would permit a finding, a direct finding from the evidence. And it does seem to me that a basic proposition is that one cannot proceed under the Construction Trust Statute without first establishing that the . . . contract for which that construction trust is sought to be imposed is one which would be lienable.

So I think sort of the basic proposition is that Plaintiff must first establish that the property is I will say lienable under Section 9-102 as a predicate for anything under Section 9-201 [*et seq.*], and there is really no evidence in this case that would permit me to make that finding directly from the evidence or by any inference from the evidence that has been submitted.

So I don't think -- the question is a closer one as to whether or not there is adequate evidence of earmarking, but I don't think I need to get to that point really, because I don't believe that the evidence as submitted is sufficient for me to, even if I looked at it in the light most favorable to the Plaintiff, which I'm not required to do, but even if I did do that, I don't think the evidence is sufficient.

So I'm going to grant the motion for judgment on behalf of Mr. Maguire and Mr. Dashiell.

On July 19, 2016, the circuit court issued a formal ruling in favor of Dashiell and Maguire. C & B filed a Motion for New Trial, which the circuit court denied without a hearing on August 16, 2016. C & B's appeal to this Court followed.

4

**DISCUSSION**

Our focus here is on the proper interpretation of RP § 9-204. The Court of Appeals reiterated in *Nesbit v. Gov't Emps. Ins. Co.* that "[w]hen the trial court's order 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'" 382 Md. 65, 72 (2004) (quoting *Walter v. Gunter,* 367 Md. 386, 392 (2002)). In this case, the trial court found that the Construction Trust statute does not apply and concluded that Dashiell and Maguire could not be held personally liable. We must examine whether that determination is legally correct.

**I.       Principles of Statutory Construction and Applicable Law**

Many issues of statutory construction are resolvable on the basis of three factors: (1) text; (2) purpose; and (3) consequences. *Town of Oxford v. Coste*, 204 Md. App. 578, 585 (2012), *aff'd* 431 Md. 14 (2013).

> Text is the plain language of the relevant provision, typically given its ordinary meaning, . . . considered in light of the whole statute, . . . and generally evaluated for ambiguity. . . . Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. . . . An examination of interpretive consequences, either as a comparison of the results of each proffered construction, . . . or as a principle of avoidance of an absurd or unreasonable reading, . . . grounds the court's interpretation in reality.

204 Md. App. 585-86 (Citations omitted); *see also Blue v. Prince George's County*, 434 Md. 681, 689 (2013).

The Court of Appeals has said:

> [w]e may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Kaczorowski v. Cty. of Baltimore*, 309 Md. 505, 515 (1987).

The Construction Trust statute was designed to "protect subcontractors from dishonest practices by general contractors and other subcontractors for whom they might work." *Ferguson Trenching v. Kiehne*, 329 Md. 169, 174-175 (1993). Thus, the legislature made officers, directors and managing agents within a contractor corporation personally liable when such agent knowingly uses monies held in trust improperly. *See* RP § 9-202. The legislative purpose was "to ensure that funds disbursed by an owner or contractor for payment to a subcontractor for work done are actually paid to the subcontractor." *See* S.B. 374, 1987 General Assembly of Maryland, *Summary of Committee Report*, 2. At the time of the enactment of the 1987 legislation, as many as eighteen other states had enacted similar construction trust statutes. *See id.* at 1.

The Construction Trust statute establishes a trust relationship in the following paragraphs:

> (1) Any money paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

6

(2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

RP § 9-201(b).

Subsection 9-202 establishes personal liability for the misuse of money held in trust:

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the money held in trust under § 9-201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the money is held in trust, shall be personally liable to any person damaged by the action.

RP § 9-202.

Finally, the paragraph most critical to this case states:

(a) This subtitle applies to contracts subject to Title 17, Subtitle 1 of the State Finance and Procurement Article, known as the "Maryland Little Miller Act", as well as property subject to § 9-102 of this title.

(b) This subtitle does not apply to:

    (1) A contract for the construction and sale of a single family residential dwelling; or

    (2) A home improvement contract by a contractor licensed under the Maryland Home Improvement Law.

(c) In this subtitle, "owner", "contractor", and "subcontractor" have the same meanings as in § 9-101 of this title.

§ 9-204. Subsection 9-204 references two other statutes. The first is the Maryland Little Miller Act ("Little Miller Act"), codified in Md. Code (1985, 2015 Repl. Vol.), § 17-101

7

*et seq.* of the State Finance and Procurement Article (SFP).  The second is RP § 9-102, which specifies the coverage of the State's mechanics' lien statute.

**II.    The Applicability Clause of the Construction Trust Statute Limits the Subtitle to Contracts Subject to Either the Little Miller Act or Maryland's Mechanics' Lien Statute.**

C & B argues on appeal that it was not required to establish that the contracts at issue fell within the Little Miller Act or the mechanics' lien statute, because the language in RP § 9-204(a) does not limit the scope of the statute's applicability; rather, it contends, that provision merely ensures that certain claims and remedies are not excluded by a trial court where more than one remedy may apply.  We disagree.

In our view, § 9-204 circumscribes the entire scope of the statute.  This applicability clause does not include the words "only" or "also" in defining the limits of the statute's reach.  Whether or not this renders the statute ambiguous, however, we are free to consult legislative history to confirm the meaning of the text. *See Mayor & Cty. Council of Baltimore v. Chase*, 360 Md. 121, 131 (2000).  We therefore examine both the statute's language in context and as a whole, its legislative history and purpose to determine its applicability.  We begin by examining the text of the statute.

**A.  The Text of RP § 9-204 Limits the Applicability of the Subtitle to Contracts Subject to the Little Miller Act and RP § 9-102.**

The complete text of § 9-204(a) is "[t]his subtitle applies to contracts subject to Title 17, Subtitle 1 of the State Finance and Procurement Article, known as the 'Maryland Little Miller Act', as well as property subject to § 9-102 of this title."  No other language in the statute defines the scope of the statute.  Indeed, prior to enactment, the clause was amended,

changing the original language of the bill, which limited it to certain sections within the subtitle, to read instead "[t]his *Subtitle* applies." *See* S.B. 374, House Jud. Comm. Amendments (April 6, 1987), Amendment No. 9.

Contained in the same paragraph of the statute, subsection 9-204(b), which was added by a House amendment to this bill, lists specifically what contracts the statute does *not* apply to, including "(1) [a] contract for the construction and sale of a single family residential dwelling," and "(2) [a] home improvement contract by a contractor licensed under the Maryland Home Improvement Law." Together, the two paragraphs provide the entirety of the statute's language describing its applicability (or non-applicability) -- the Subtitle applies to contracts subject to the Little Miller Act or the mechanics' lien statute, and it does not apply to certain contracts for the construction of single family homes and home improvement contracts. Notably, no language in the Subtitle indicates that the statute would apply to contracts not subject to the Little Miller Act or the mechanics' lien statute. Clearly, subsection (b) is an exception to the general scope of the statute's applicability contained in subsection (a).

Further, the purpose clause in the title of the Construction Trust legislation was amended prior to enactment to broaden the scope of § 9-204. The language of the title in the original bill, which read "For the purpose of . . . providing *a certain* application of this Act," was amended to read "For the purpose of . . . providing for *the* application of this Act. Ch. 345, Laws of 1987, 1932 (Emphasis added). In other words, this change to the Subtitle's purpose clause clarified that the bill provided *the* application of the Subtitle, rather than merely *certain* applications. This change suggests exclusivity.

9

## B. The Context and Purpose of the Statute Clarify the Intended Scope of the Applicability Clause.

That § 9-204 defines the entire scope of the statute's applicability is made clearer by examining the statute as a whole, particularly regarding the subtitle's incorporation of the mechanics' lien statute.[6] For private construction projects, limiting the availability of remedies in the Construction Trust statute to contracts subject to the mechanics' lien statute is consistent with the subtitle's other cross references to the mechanics' lien statute. *See, e.g.*, RP § 9-204(c). Not only does § 9-204(a) reference the mechanics' lien statute as one of two areas of applicability, but subsection (c) of RP § 9-204 relies on the mechanics' lien statute to define its critical terms.[7] Linking the meanings of terms in the Construction Trust statute to the definitions provided in the mechanics' lien statute aids in determining whether the Construction Trust statute applies to a particular contract. Clearly, the Construction Trust statute was drafted with the mechanics' lien statute in mind.

Moreover, the well-defined boundaries provided in the mechanics' lien statute are in stark contrast to C & B's view of RP § 9-204(a). Subsection 9-102(a) of the Real Property Article provides, in great detail, the applicability of the mechanics' lien statute to "buildings":

> Every building erected and every building repaired, rebuilt, or improved to the extent of 15 percent of its value is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted

---

[6]    The other statute referenced, the Little Miller Act, applies to public contracts. *See* SFP § 17-102. No evidence was presented before the trial court that any of the six contracts were awarded by a "public body." *See* § 17-102(a).

[7]    These terms include "owner," "contractor," and "subcontractor." RP § 9-204(c).

for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool or fencing, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, the grading, filling, landscaping, and paving of the premises, the provision of building or landscape architectural services, engineering services, land surveying services, or interior design services that pertain to interior construction and are provided by a certified interior designer, and the leasing of equipment, with or without an operator, for use for or about the building or premises.

RP § 9-102(a).

Unlike the mechanics' lien statute, in which the legislature took great pains to specify the contracts covered, the Construction Trust Statute, C & B argues, was intended by the General Assembly to apply broadly to any contract "for work done or materials furnished . . . for or about a building by any subcontractor," *see* RP § 9-202. C & B contends that RP § 9-204(a) was included merely to ensure a case is not dismissed where the subcontractor has other remedies under the mechanics' lien statute or the Little Miller Act. We can find no support for C & B's contention.[8]

In interpreting statutory language in a manner that is "reasonable and consonant with logic and common sense," *Degren v. State*, 352 Md. 400, 418 (1999), we note that limiting the Construction Trust statute's applicability to the same limitations imposed

---

[8] While the General Assembly did not interweave precise language of the Little Miller Act with the Construction Trust statute, as it did with the mechanics' lien statute, this by no means suggests that these provisions are merely supplemental.

11

under Maryland's mechanics' lien statute, as well as the Little Miller Act,[9] makes sense in light of the common purpose of the statutes. The mechanics' lien statute furthers the same underlying objective as the Construction Trust statute -- to protect "those who furnish labor and materials." *See Celta Corp. v. A.G. Parrott Co.*, 94 Md. App. 312, 319 (1993) (citing *Riley v. Abrams,* 287 Md. 348 (1980)) ("The purpose of the Maryland mechanic's lien statute is to protect those who furnish labor and materials during the construction process."). The mechanics' lien statute, however, provides subcontractors a different remedy for recovering unpaid funds.

Further, with respect to contracts for construction work on private properties, limiting the scope of the Construction Trust statute's applicability to those that also meet the requirements of the mechanics' lien statute, as well as defining critical terms in the same way, provides greater certainty in the statute's operation. The requirements of Maryland's mechanics' lien statute have been refined by amendments and thoroughly litigated, resolving many complex applicability questions. *See Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 302 (1962) ("[T]hroughout the legislative history of the mechanics' lien law in Maryland the law has been repeatedly amended to include specific lienable structures . . . ."); *see also Blake v. Pitcher*, 46 Md. 453, 464 (1877) ("The spirit in which the Mechanics' Lien Law is to be interpreted, has been prescribed by the [l]egislature and impressed in such strong terms upon its face, that no

---

[9] Likewise, the (federal) "Miller Act," codified at 40 U.S.C. § 3131 *et seq.*, "was intended as a simple remedy for unpaid subcontractors on federal building projects." *U.S. for the use of Allied Bldg. Prod. Corp. v. Fed. Ins. Co.*, 729 F. Supp. 477, 479 (D. Md. 1990).

Court can mistake its meaning."). Because of the absence of any right to a mechanics' lien at common law, a mechanics' lien may arise only where the applicability requirements of the statute are met. *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 536 (1977) (quoting *Freeform Pools*, 228 Md. at 301) ("[S]ince such a lien . . . is a creature of statute, it is 'obtainable only if the requirements of the statute are complied with.'"). Moreover, a court may not "extend the mechanic's lien law beyond the obvious designs and plain requirements of the statute." *Celta Corp.*, 94 Md. App. at 319 (Citations omitted).

The mechanics' lien statute, however, does not provide a remedy for contractors or subcontractors who provide labor or materials to construction projects that improve state-owned properties. *See In re Fowble*, 213 F. 676, 679-80 (D. Md. 1914). The enactment of the "Little Miller Act," however, bridged this gap by providing protections for those subcontractors who perform work under public contracts. *See* SFP § 17-103. With the addition of the Little Miller Act to § 9-204(a), a broad range of both public and private construction projects fall within the reach of the Subtitle.

**C. The Consequences of Construing the Statute as C & B Proposes Provides Further Support that the General Assembly Did Not Intend to Broaden the Construction Trust Statute to Include all Subcontractors.**

Adopting C & B's proffered construction of the statute -- that § 9-202 applies to all subcontractors who do any work at all under a construction contract -- would impose unprecedented liability upon officers and directors of contractor corporations. To assume the legislature intended such exposure, without expressly addressing that purpose, is unreasonable. In contrast, however, limiting the statute to public and private contracts of a particular caliber, is consistent with reason and common sense.

13

By limiting the Construction Trust statute's applicability to cases in which either the mechanics' lien statute or the Little Miller Act apply, the statute provides a different remedy to the same classes of suppliers of labor and materials whom the legislature has historically sought to protect. In so doing, however, the Construction Trust statute limits the universe of claimants capable of holding officers, directors, and managing agents liable to a specific group of subcontractors and places finite limits on the subject of applicable construction projects.

Both the mechanics' lien statute and the Construction Trust statute provide remedies not available at common law. The Court of Appeals explained in *Winkler Constr. Co., Inc. v. Jerome* that "as a mechanic's lien was unknown at common law and is purely a creature of statute, it is 'obtainable only if the requirements of the statute are complied with.'" 355 Md. 231, 247 (1999) (quoting *Freeform Pools*, 228 Md. at 301) (Citation omitted). Indeed, the mechanics' lien statute was "comprehensively rewritten to provide a greater measure of due process to the owner" of the project. *See id.* at 248. Likewise, the Construction Trust statute acts in derogation to corporate law precedents that typically shield officers and directors from liability for the debts of the corporation. *See Ferguson Trenching*, 329 Md. at 175 ("The personal liability provisions of the statute must be viewed in the context of basic corporate law. Officers and directors of a corporation generally are insulated from personal liability for the debts of the corporation."); *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 578 (1995) ("The rule is clear. . . that an officer is not personally liable on an agreement when there is no evidence in the record that the officer intended to assume the obligation."). Further, where a statute is "in derogation of the common law," it must be

14

strictly construed. *Bruce v. Dyer*, 309 Md. 421, 431-32 (1987). Restricting the extraordinary remedy of holding directors of a corporation personally liable for the debts of the corporation to only those who meet certain well-established requirements of the mechanics' lien statute and the Little Miller Act is consistent with this principle.

**D. Every Court to Address the Applicability Clause of the Maryland Construction Trust Statute has Reached the Same Conclusion.**

The Court of Appeals first examined the Construction Trust statute in *Ferguson Trenching*, 329 Md. 169. C & B points to the Court's opinion in *Ferguson Trenching* as support for its argument that RP § 9-204(a) does not limit the statute to cases in which the Little Miller Act or the mechanics' lien statute apply. C & B relies on *Ferguson Trenching's* observation that "the statute applies to both private and public construction projects, but not to contracts for the construction and sale of a single family residential dwelling or to home improvement contracts by licensed home improvement contractors." *Id.* at 174-75. C & B points out that "[t]he only exception noted by the Court of Appeals was to residential dwelling and home improvement contracts." Nothing in *Ferguson Trenching*, however, supports that the Construction Trust statute applies more broadly to those projects not subject to the Little Miller Act or the mechanics' lien statute.

Although no Maryland court has addressed in detail the scope of the applicability clause of the Construction Trust statute, Judge James Eyler, writing for this Court in *Walter v. Atl. Builders Group, Inc.*, described the requirements of § 9-204 and strongly suggested that the applicability of the subtitle is limited to contracts subject to the Little Miller Act or the mechanics' lien statute. 180 Md. App. 347, 351 n. 3 (2008). The Court said that the

15

Construction Trust statute applied where the contract at issue was one for the building of a public library for Harford County. *See id.* Notably, Judge Eyler wrote "[t]he contract for construction of the library was subject to the 'Maryland Little Miller Act,' . . . *and thus*, the Maryland Construction Trust statute was applicable." *Id.* (Emphasis added).

Federal courts that have examined Maryland's Construction Trust statute have reached the same conclusion we reach here. The U.S. District Court for the District of Maryland, in *Allied Bldg.*, noted:

> The Maryland Construction Trust Statute . . . applies *only* to state-financed buildings and to those subject to the Maryland mechanics' lien statute. Of course, federal construction projects such as this are not subject to the Maryland mechanics' lien statute, which is why the Miller Act was enacted in the first place.

729 F. Supp. at 479 (citing RP §§ 9-201 to 204) (Emphasis added).

Following *Allied Bldg.*, the federal court in the District of Columbia reiterated this point. *See U.S. for the use of DMI, Inc. v. Darwin Const. Co.*, 750 F. Supp. 536, 541 (D.D.C. 1990) (citing *Allied Bldg.*, 729 F. Supp. at 478). In that case, "[b]ecause the contract . . . involved a federal construction project, and was not funded by the state of Maryland," the plaintiff could not establish a successful claim under the Construction Trust statute. *Id.* Without showing that the contract was subject to either the Little Miller Act or the mechanics' lien statute, the Construction Trust statute did not permit liability.

Similarly, the U.S. Bankruptcy Court for the District of Maryland found that "the statute, by its own terms, only applies to State-financed buildings and to those subject to the Maryland mechanics' lien statute, . . . and does not apply to '[a] contract for the

16

construction and sale of a single family residential dwelling.'" *In re Heilman*, 241 B.R. 137, 152 (Bankr. D. Md. 1999) (citing *Allied Bldg.*, 729 F. Supp. 477) (Citations omitted). Again, the U.S. Bankruptcy Court for the District of Maryland, in *In re McGee*, found that the statute applied to permit a contractor to be held personally liable, noting specifically that "[t]he statute is applicable to the instant case *because* it applies to buildings that are subject to the Maryland mechanics' lien statute . . . *,* as were the buildings in this case . . . ." 258 B.R. 139, 143 (Bankr. D. Md. 2001) (Emphasis added).

The most recent opinion to address the applicability of Maryland's Construction Trust statute is *Jaguar Techs., Inc. v. Cable-La, Inc.*, 229 F. Supp. 2d 453 (D. Md. 2002). Again, the U.S. District Court in *Jaguar Techs.* reached the same conclusion as every other court that has interpreted the applicability clause of Maryland's Construction Trust statute:

> Application of the Construction Trust Statute is *limited to* property subject to § 9–102 (the Maryland Mechanics' Lien Statute) and to contracts subject to Title 17, Subtitle 1 of the State Finance and Procurement Article (also known as the Maryland Little Miller Act).

*Id.* at 455–56 (Emphasis added). There, the District Court considered whether Maryland's Construction Trust statute applied where the plaintiff had not properly alleged that the subject of the construction contract was within the applicability of the mechanics' lien statute.[10] *See id.* at 456. The court ultimately dismissed the claim based on the inapplicability of the mechanics' lien statute, and thus, the Construction Trust statute.

---

[10] The court had previously observed, "Plaintiff has not alleged that the construction project for which it was hired was undertaken pursuant to a state contract, the Maryland Little Miller Act has no bearing on the analysis here." *Jaguar Techs.*, 229 F. Supp. 2d at

17

Indeed, the *Jaguar Techs.* court addressed and rejected one of the primary arguments that C & B advances in this case -- that interpreting § 9-204 to limit the applicability of the Construction Trust statute to only those projects to which either the Little Miller Act or the mechanics' lien statute already applies is illogical because it provides a "belt and suspenders" to the same group of subcontractors. In other words, C & B argues, like the plaintiff in *Jaguar Techs.*, that our reading of § 9-204(a) as a comprehensive applicability provision would provide an unnecessary remedy where one already exists. We find the *Jaguar Techs*. court's answer to that contention persuasive --

> The flaw in Plaintiff's logic is obvious: requiring that property subject to the Construction Trust Statute be property that is also subject to the Mechanics' Lien Statute does not require that the *rights and remedies* available under the Construction Trust [Statute] also be those available under the Mechanics' Lien Statute.

*Id.* at 457.

The Construction Trust statute provides an entirely separate remedy for subcontractors who have not been paid for their work, which may be more or less beneficial for a particular subcontractor depending on the pertinent circumstances. Moreover, the legislature's attempt to provide a different remedy to particular classes that it views in need of protection certainly does not lead to an illogical result, nor does limiting the applicability of that remedy render the statute meaningless.

---

456. The court, therefore, focused narrowly on the applicability of the mechanics' lien statute.

18

Based on the text of the statute, as well as our review of its context, purpose, and legislative history, we hold that the Construction Trust statute applies exclusively to contracts subject to the Little Miller Act or the mechanics' lien statute. Accordingly, the circuit court did not err in its finding that C & B failed to establish the applicability of the statute to the contracts at issue. We therefore affirm the circuit court's decision to grant judgment in favor of Dashiell and Maguire. Because we affirm the circuit court's decision based on C & B's failure to prove the applicability of RP § 9-202, we need not address the second issue of whether funds were earmarked for payment to C & B.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

19